[No. H032314. Sixth Dist. Mar. 6, 2009.]

THE PEOPLE, Plaintiff and Appellant, v.
FRANCISCO GUADALUPE MENDOZA, Defendant and Respondent.

**COUNSEL**

Dean D. Flippo, District Attorney, and Pamela L. Ham, Deputy District Attorney, for Plaintiff and Appellant.

Gerald Clausen, under appointment by the Court of Appeal, for Defendant and Respondent.

**OPINION**

**ELIA, J.**—In this appeal by the People, this court must resolve the following question. Does the superior court have authority, while a defendant is still on

probation, to reduce a county jail term imposed as a condition of probation when the defendant has already served the term? For reasons set forth in this opinion we determine that the superior court does not have such authority. Accordingly, we reverse the superior court's order.

*Facts and Procedural History*

On January 11, 2006, respondent Francisco Guadalupe Mendoza pleaded no contest to one count of felony grand theft in exchange for a grant of felony probation. Before accepting respondent's plea, the superior court (hereafter the court) asked respondent if he understood that his conviction could "be used to impact [his] immigration rights." Respondent affirmed that he understood. The record contains a form entitled "WAIVER OF RIGHTS PLEA OF GUILTY/NO CONTEST" in which respondent was informed that if he did not have United States citizenship, "a plea of Guilty/No Contest will result in [his] deportation, exclusion from admission to this country, denial of naturalization and/or denial of re-entry to this country." Respondent signed the waiver of rights form and initialed it to acknowledge that he understood the immigration consequences of his plea.

On May 2, 2006, the court placed respondent on probation for a period of five years. During the sentencing hearing, the prosecutor argued that as one of the conditions of probation respondent should serve 365 days in county jail.[1] The court imposed a 365-day county jail term as one of the conditions of probation with a credit of two days for time served. In addition, the court imposed victim restitution in the amount of $26,867.17 plus interest from December 13, 2003. The court imposed various other conditions of probation not relevant here. At the time the court ordered that respondent pay restitution to the victims, the court told respondent that if he paid restitution to his victims the court would be "willing to consider a modification of [his] sentence if the victims have been completely paid."[2]

The probation report noted that respondent was born in Mexico. Accordingly, included within the recommendations for conditions of probation was a condition that if he was deported, respondent's probation would revert to nonreporting. The court advised respondent, "In the event you are deported, probation

---

[1] Respondent's probation officer had recommended 270 days in county jail.

[2] The underlying facts of this case are not pertinent to this appeal other than to note that respondent fraudulently sold a trailer home to two migrant farm workers for $46,000. The workers paid respondent $26,000 as a deposit. Ultimately, the money disappeared. The farm workers could not use the trailer because of code violations and respondent refused to refund the money. It appears this was not the first time respondent had attempted to sell the trailer under similar conditions. Respondent attempted to discharge his debt to the victims by declaring bankruptcy.

is to revert to non-reporting. You're ordered not to reenter the United States unless you do so legally. Any illegal entry into the United States will be deemed a violation of probation. Upon legal reentry, you must report to the probation department within 72 hours—upon any reentry."

On May 31, 2006, the court denied respondent's request to reduce his jail term based on the fact that respondent had not fully paid restitution to the victims. Counsel represented to the court that respondent's family had gathered $7,000 in cash to pay the victims restitution. The court denied the request to modify the jail sentence stating, "Well, as I stated to the defendant as well as to the attorneys, I am fully prepared to reduce the jail sentence but restitution has to be paid . . . ." At the close of the hearing, the court reiterated, "Whenever the defendant has been able to make restitution, it should be put back on calendar so that I can consider a release."

For a second time, on October 24, 2006, while he was still serving his jail sentence, respondent asked for a reduction of his jail time. This time, counsel explained to the court that respondent's family had told him that they had paid $5,000 through the probation department for victim restitution. Again, the court denied respondent's request. The minute order reflects that respondent was to continue serving his jail term.

At a restitution hearing held November 9, 2006, counsel represented to the court that he had documentation that confirmed that respondent's family had paid approximately $2,000 and that respondent's son had had his wages garnished in the amount of $3,000. The court told counsel that $5,000 was "not enough to warrant a change in the sentence." The court recalled that respondent owed $22,000 so he needed to "make significant . . . progress towards that amount" before the court was willing to consider modifying the sentence.

On August 30, 2007, sometime after respondent had completed his jail term and been transferred to a federal detention facility pending deportation, a hearing was held during which respondent's counsel again sought a reduction in respondent's sentence. Respondent's counsel told the court that it was not the grand theft conviction "in and of itself" that was "causing [respondent's] deportation" but rather the 365-day jail sentence. Counsel told the court that respondent's family had made a $5,000 restitution payment and asked the court to reduce respondent's jail term to 364 days because knowing that the court's primary concern was victim restitution, "if . . . the 365 day sentence stays and he's deported, the reality is they're not going to get any more of it than they already have."

The court replied that it was unwilling to modify the jail term by reducing it to 364 days, but would consider reducing it to 250 days if respondent

waived his custody credits. Specifically, the court told counsel, "So if he was willing to give up those credits[,] which obviously he can do[,] and if he was willing to give up those credits, I would think that it would be in the victims' best interest in having him do that because that would be additional time hanging over his head so that we could pursue this restitution. That would seem to be some advantage to the victims."

The court continued the matter so the parties could file briefs. Respondent's counsel stated that she would obtain a written waiver from respondent waiving his right to be present at the next hearing. The court told respondent's counsel that as long as she was getting a waiver of respondent's presence she "might also want to ask him if he would be willing to give up credits . . . ."

In a written motion, filed on September 12, 2007, counsel stated that respondent was a permanent legal resident of the United States, but by virtue of his 365-day jail sentence, considered a "serious" felony by immigration standards, respondent was facing deportation to Mexico.[3]

The parties appeared before the court on September 18, 2007. Respondent filed a written waiver of his presence and waived credit for time served beyond 250 days. The court reiterated that it was considering modifying respondent's jail sentence only for the purpose of motivating respondent to pay additional restitution and not for the purpose of enabling him to avoid deportation.

Nevertheless, the court refused to modify the jail sentence because the court felt that respondent had failed to offer adequate proof of the amount of restitution paid up to that point. The court put over the matter for one week.[4]

---

[3] Title 8 United States Code section 1227(a)(2)(A)(iii) provides, "Any alien who is convicted of an aggravated felony at any time after admission is deportable." In turn, title 8 United States Code section 1101(a)(43)(G) defines an aggravated felony to include "a theft offense . . . for which the term of imprisonment [is] at least one year." County jail terms of one year as a condition of probation satisfy this requirement. Furthermore, except in two cases not relevant here, for immigration purposes it is the nominal sentence ordered by the court, rather than the actual time spent incarcerated. (Cal. Criminal Law: Procedure and Practice (Cont.Ed.Bar 11th ed. 2008) § 52.10, pp. 1710–1711.) Specifically, "[a]ny reference to a term of imprisonment or a sentence with respect to an offense is deemed to include *the period of incarceration or confinement ordered by a court of law* regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part." (8 U.S.C. § 1101(a)(48)(B), italics added.)

[4] Appellant did not provide some of the foregoing facts to this court. However, on August 7, 2008, this court granted respondent's motion to augment the record with the transcript of the August 30 and September 18, 2007 hearings, as well as a copy of respondent's waiver of his presence at the September 18 hearing and waiver of his custody credits.

On October 2, 2007, in response to the prosecutor's argument that the court should not interfere with the sentence for the purpose of preventing the federal courts from using the conviction, the court emphasized once again that the objective in reducing respondent's jail term was to motivate respondent to make restitution to the victims. Respondent's counsel told the court that probation had received between $7,500 and $8,000 in victim restitution payments. The court granted the request for modification, striking respondent's custody credits, thereby making the time he served 250 days. The court warned respondent's counsel, "restitution is going to be critical. If he doesn't pay restitution, he's going to prison."

On November 19, 2007, the People filed a notice of appeal from the October 2, 2007 order granting the motion to modify retroactively respondent's jail term.

## Discussion

### The People's Right to Appeal

■ "The People have a right to appeal '[a]n order made after judgment, affecting the substantial rights of the people.' (Pen. Code, § 1238, subd. (a)(5).)" (*People v. Borja* (2002) 95 Cal.App.4th 481, 484 [115 Cal.Rptr.2d 728].) A probation order is considered to be a final judgment for the "limited purpose of taking an appeal therefrom." (*People v. Superior Court (Giron)* (1974) 11 Cal.3d 793, 796 [114 Cal.Rptr. 596, 523 P.2d 636].) The order here affected the substantial rights of the People by reducing the jail term initially imposed upon respondent.[5]

In order to answer the question presented in this case it is important to understand when a court is deprived of its authority to resentence a defendant.

■ "Under the general common law rule, a trial court is deprived of jurisdiction to resentence a criminal defendant once execution of the sentence has commenced. [Citations.] Where the trial court relinquishes custody of a defendant, it also loses jurisdiction over that defendant. [Citation.] If, however, the trial court 'retains in itself the actual or constructive custody of the

---

[5] Penal Code section 1238, subdivision (d) prohibits the People from "appeal[ing] . . . an order granting probation" and limits the People to filing a petition for a writ of mandate or prohibition. "The limitation on People's appeals from *grants* of probation was enacted because of delays inherent in the appellate process and the concern a defendant might serve all or substantially all of his probation term before the appeal was heard. [Citation.] This subdivision has no application here; the People are not appealing a *grant* of probation; they are appealing an order made *after* the grant of probation that seeks to modify nunc pro tunc a probation term that has been fully served." (*People v. Borja, supra*, 95 Cal.App.4th at p. 485.)

defendant and the execution of his sentence has not begun,' the court may vacate and modify the sentence. [Citations.]" (*People v. Karaman* (1992) 4 Cal.4th 335, 344 [14 Cal.Rptr.2d 801, 842 P.2d 100] (*Karaman*).)

■ "In a criminal case, the execution of a judgment of conviction is the process of carrying the judgment into effect. [Citation.] [Fn. omitted.] The manner of executing a judgment sentencing a defendant to imprisonment is prescribed by the Penal Code. When a judgment other than death has been pronounced, and the judgment is for incarceration in a state prison, either a certified copy of the minute order or a certified abstract of the judgment 'shall be forthwith furnished to the officer whose duty it is to execute the . . . judgment, and no other warrant or authority is necessary to justify or require its execution'; the certified abstract or minute order constitutes the commitment. [Citations.] [Fn. omitted.] The commitment document is the order remanding the defendant to prison and is ' "the process and authority for carrying the judgment and sentence into effect." [Citations].' [Citations.]" (*Karaman, supra*, 4 Cal.4th at p. 344.)

Thus, "In a criminal case, judgment is rendered when the trial court orally pronounces sentence. [Citations.] A judgment in a criminal case may consist of a fine, a term of imprisonment, or both [citation], and the judgment may be imposed or, in appropriate cases, suspended. [Citation.]" (*Karaman, supra*, 4 Cal.4th at p. 344, fn. 9.)

■ "If the judgment is for imprisonment, 'the defendant must forthwith be committed to the custody of the proper officer and by him or her detained until the judgment is complied with.' [Citation.] The sheriff, upon receipt of the certified abstract of judgment 'or minute order thereof,' is required to deliver the defendant to the warden of the state prison together with the certified abstract of judgment or minute order. [Citation.] 'It is clear then that at least upon the receipt of the abstract of the judgment by the sheriff, the execution of the judgment is in progress.' [Citations.]" (*Karaman, supra*, 4 Cal.4th at p. 345.)

■ A "[g]rant of probation is, of course, qualitatively different from such traditional forms of punishment as fines or imprisonment. Probation is neither 'punishment' [citation] nor a criminal 'judgment' [citation]. Instead, courts deem probation an act of clemency in lieu of punishment [citation] . . . ." (*People v. Howard* (1997) 16 Cal.4th 1081, 1092 [68 Cal.Rptr.2d 870, 946 P.2d 828].)

■ In *People v. Banks* (1959) 53 Cal.2d 370 [1 Cal.Rptr. 669, 348 P.2d 102], the California Supreme Court observed that if upon entry of a guilty plea, the court decided to retain jurisdiction under the statutes dealing with

probation, it may pronounce judgment and suspend its execution by refraining from issuing a commitment of the defendant to the prison authority. "The critical requirement for control over the defendant and the res of the action is that the court shall not have surrendered its jurisdiction in the premises *by committing and delivering the defendant to the prison authority.*" (*Id.* at p. 384, italics added.) Thus, under the probation statutes, as long as the court retains the actual or constructive custody of the defendant in itself it retains jurisdiction over him and the res of the action. (*Id.* at p. 383.)

Furthermore, when the court suspends imposition of sentence, as it did here, no judgment is then pending against the probationer, who is subject only to the conditions of probation. (*People v. Howard, supra*, 16 Cal.4th 1081, 1087.)

At the outset, it is important to note that appellant does not contend that the court violated the terms of any plea bargain agreement by modifying respondent's jail term.

In *People v. Segura* (2008) 44 Cal.4th 921 [80 Cal.Rptr.3d 715, 188 P.3d 649] (*Segura*), the California Supreme Court held that the superior court does not have authority to modify a jail term that was included within the terms of a negotiated plea agreement. (*Id.* at pp. 935–936 [a jail term is not subject to subsequent modification without the consent of *both* parties, and cannot be altered solely on the basis of the superior court's general statutory authority to modify probation during the probationary period].)

The defendant in *Segura* was charged with the commission of a felony. He negotiated with the prosecutor a plea of no contest to the charge in exchange for which prior conviction allegations were to be dismissed and he was to be placed on probation on the condition, among others, that he serve 365 days in county jail. Prior to entering his plea, the defendant waived his constitutional rights and acknowledged that if he was not a citizen of the United States, the one-year jail term would qualify the offense as an "aggravated felony" under federal law and require his deportation. After the defendant served his jail term, when the federal authorities initiated deportation proceedings, he applied to the trial court to "reduce" his jail term to 360 days, effective nunc pro tunc. The trial court denied the defendant's request on the ground the court was not authorized to modify a sentence prescribed pursuant to the parties' plea agreement. On appeal, the reviewing court reversed, concluding the trial court possessed continuing jurisdiction during the period of probation and the authority to modify or revoke probation, including a change in the agreed-upon term of confinement that was imposed as a condition of probation. (*Segura, supra*, 44 Cal.4th 921, 925.)

The California Supreme Court granted review to determine whether a prescribed jail term that constituted a material provision of a plea agreement conferring, as its chief benefit, a grant of probation in lieu of a prison sentence, could be modified by the trial court in the exercise of its authority to modify or revoke probation during the probationary period. (*Segura, supra*, 44 Cal.4th at p. 925.)

In *Segura*, the California Supreme Court explained that the trial court's statutory authority to modify conditions of probation in the exercise of its jurisdiction over a probationer did not extend to modifying a material term of a plea agreement that bestowed the privilege of probation subject to a defendant's service of a specified jail term. Accordingly, the California Supreme Court reversed the judgment rendered by the Court of Appeal. (*Segura, supra*, 44 Cal.4th at p. 925.)

Citing *People v. Borja, supra*, 95 Cal.App.4th 481 (*Borja*), appellant argues that case law prohibits a court from altering a record of conviction to facilitate a criminal defendant in thwarting immigration consequences of a conviction.

In *Borja*, initially, the defendant had been granted probation conditioned in part on a jail term of 365 days. Almost six years later, after the defendant had completed his probation, the defendant sought and obtained a nunc pro tunc modification of the probation condition to a sentence of 364 days. This change was important to avoid the defendant's deportation for an aggravated felony under federal immigration laws. (*Borja, supra*, 95 Cal.App.4th at pp. 483–484.) The appellate court found the change invalid, stating that "[t]his case does not involve a clerical order." (*Id.* at p. 485.) The defendant was seeking a retroactive change in the sentence "that had been intended, imposed and served." (*Ibid.*)

We note that in *Segura, supra*, 44 Cal.4th 921, the parties disputed whether the Court of Appeal's decision was consistent with, or distinguishable from, the decision in *Borja, supra*, 95 Cal.App.4th 481. (*Segura, supra*, at p. 925, fn. 1.) Ultimately, the California Supreme Court did not address the holding in *Borja*. The *Segura* court stated, "In the present case, the appellate court held that the trial court was statutorily authorized to modify the terms of probation at the time defendant sought modification of his sentence, and that a nunc pro tunc order was appropriate to achieve that end. Because we hold that the trial court was not authorized by section 1203.3 to modify the jail term that was included within the terms of the negotiated plea agreement, and correctly denied defendant's motion, we need not engage in any further analysis of *Borja*." (*Segura, supra*, 44 Cal.4th at p. 933, fn. 9.)

Respondent argues that *Borja* is distinguishable because he was still on probation when the court modified his probation, in contrast to the defendant in *Borja*. At first, the distinction sounds persuasive. However, we find that it is not because initially the court ordered a 365-day jail term and respondent served that time. Thus, the court was attempting to create the same kind of legal fiction in this case as was disapproved in *Borja*. As noted, for immigration purposes it is the nominal sentence ordered by the court, rather than the actual time spent incarcerated. Here the court ordered a 365-day jail term and respondent served that term. Just as in *Borja*, respondent sought "imposition of a sentence different from the one that had been intended, imposed and served." (*Borja, supra,* 95 Cal.App.4th at p. 485.)

Respondent contends that because he waived his custody credits the court had authority under *People v. Johnson* (1978) 82 Cal.App.3d 183 [147 Cal.Rptr. 55] (*Johnson I*), to reduce the jail term he had already served.

The *Johnson I* court held, "a defendant who has served one year in jail as a condition of probation and who thereafter violates probation may be sentenced to an additional period of up to one year in jail if he knowingly and intelligently waives the provisions of Penal Code section 2900.5." (*Johnson I, supra,* 82 Cal.App.3d 183, 184–185; see *People v. Johnson* (2002) 28 Cal.4th 1050, 1053–1054 [123 Cal.Rptr.2d 700, 51 P.3d 913] [a defendant may expressly waive entitlement to § 2900.5 credits against an ultimate jail or prison sentence for *past* and future days in custody].) This "enables a sentencing court to reinstate a defendant on probation after he or she has violated probation, conditioned on service of an additional county jail term, as an alternative to imposing a state prison sentence." (*People v. Arnold* (2004) 33 Cal.4th 294, 297–298 [14 Cal.Rptr.3d 840, 92 P.3d 335].)

In *Johnson I*, the defendant was convicted of receiving stolen property. Thereafter, he was placed on probation on condition that he serve one year in jail. He served that term. He violated his probation by committing grand theft. Through his attorney, he suggested that additional jail time be considered. The lower court declined to consider additional jail time on the basis that it had no authority to do so. The court sentenced the defendant to prison. (*Johnson I, supra,* 82 Cal.App.3d 183, 185.)

On appeal, the *Johnson I* court held, "that a proper interpretation of Penal Code section 2900.5 permits a defendant to knowingly and intelligently waive the provisions thereof that require all days of custody be credited to his sentence, including any period of imprisonment as a condition of probation." (*Johnson I, supra,* 82 Cal.App.3d at p. 188.) Thus, the *Johnson I* court concluded "that where a defendant who has spent a year in the county jail as a condition of probation subsequently commits a probation violation, the

sentencing judge should not be forced to choose between ignoring the violation or imposing sentence to state prison. The court should be free to choose either of these options in the exercise of its discretion but it should also have the power, with the consent of the defendant, to fashion an intermediate disposition by modifying probation to provide for additional time up to one year in jail." (*Ibid.*)[6]

Nevertheless, the *Johnson I* court was addressing the dilemma a sentencing court faces when confronted by a probation violator who has already served a year in the county jail. Penal Code former section 19a[7] provided that a defendant may not be sentenced to more than one year in the county jail as a condition of probation. In addition, Penal Code section 2900.5 mandated that all days spent in custody as a condition of probation be credited against a prison term. The *Johnson I* court concluded that on their face "The net result of these two legislative efforts is that if a defendant has served a year in jail as a condition of probation, a violation means either a prison sentence or a fatherly (or motherly) lecture on the evils of crime." (*Johnson I, supra*, 82 Cal.App.3d at p. 185.)

The *Johnson I* court noted, however, that the legislative histories of Penal Code sections 19a and 2900.5 made clear that the intent of the legislation was simply to benefit the prisoner and not to satisfy any other overriding social, political, or fiscal purpose. (*Johnson I, supra*, 82 Cal.App.3d at p. 185, fn. 2.)

---

[6] Originally, Penal Code section 2900.5 established a custody credit scheme for the benefit of defendants who were actually sentenced to state prison. Thus, a defendant committed to state prison received credit *against his or her prison sentence* for any local time spent in jail, including jail time previously served as a condition of probation for the same offense. However, the credit scheme first embodied in Penal Code section 2900.5 had no application to defendants who were being sentenced to local jail time as a condition of probation or reinstatement of probation. Ultimately, in 1976 subdivision (c) of Penal Code section 2900.5, which had limited the application of that section's custody credit scheme to state prison commitments, was amended to redefine the term against which custody credits were to be applied, to include any period of imprisonment imposed as a condition of probation. As a result of this amendment, actual time previously served in county jail, including time served as a condition of probation, would be credited against any new term of imprisonment served in the county jail for the same offense, including any new jail term imposed as a condition of continuing or reinstating the defendant on probation. (*People v. Arnold, supra*, 33 Cal.4th 294, 300–301.)

The so-called *Johnson* waiver "is commonly employed where the court is hesitant to impose a prison sentence, but a defendant has already served most of the one year maximum permitted in county jail. In such a case, the court may wish to impose enough additional jail time to compel the defendant to recognize the seriousness of his actions, while the defendant wishes to avoid a prison term; by waiving his credits, the defendant submits to additional jail time, but avoids prison." (*People v. Eastman* (1993) 13 Cal.App.4th 668, 678 [16 Cal.Rptr.2d 608], citing *Johnson I, supra*, 82 Cal.App.3d at p. 188.)

[7] Penal Code section 19a was renumbered section 19.2 in 1989. (Stats. 1989, ch. 897, § 6, p. 3060.)

Inherent in the *Johnson I* holding is the concept of the exchange of a defendant's statutory right for the benefit of a less onerous disposition than would otherwise be available. Nothing in the holding of *Johnson I* sanctions the creation of a legal fiction to avoid the immigration consequences of a 365-day jail term.

Furthermore, custody credits are applied against a subsequent term of imprisonment, including any period of imprisonment imposed as a condition of continuing or reinstating a defendant on probation. They do not change the nominal sentence imposed by the court. (Cal. Rules of Court, rule 4.472; Pen. Code, §§ 2900.5 & 4019; *People v. Arnold, supra*, 33 Cal.4th 294, 300–301.)

Here, in arguing for a reduction of his already served jail term, respondent relied on *People v. Cookson* (1991) 54 Cal.3d 1091 [2 Cal.Rptr.2d 176, 820 P.2d 278] (*Cookson*). Specifically, respondent argued that a court is able to modify a sentence upon a showing of a change in circumstances. Appellant argues that *Cookson* does not provide such authority.

In *Cookson*, after defendent pleaded no contest to one count of diverting construction funds, the court ordered the defendant to pay a total of $12,000 in victim restitution over a probation period of three years. (*Cookson, supra*, 54 Cal.3d at p. 1093.) However, three years of a payment schedule of $100 a month amounted to approximately only $4,085. Accordingly, the lower court modified the defendant's probation to extend it for two more years. (*Id.* at p. 1094.) On appeal, the defendant claimed that his probation was "improperly extended without proof he willfully failed to pay restitution as ordered." (*Id.* at p. 1095.) Penal Code section 1203.2 subdivision (a), states in relevant part that "probation shall not be revoked for failure of a person to make restitution . . . as a condition of probation unless the court determines that the defendant has willfully failed to pay and has the ability to pay." The California Supreme Court held that "section 1203.2(a) does not prohibit a court from extending a term of probation when the probationer fails to pay restitution as ordered because of an inability to pay," and therefore it was appropriate to modify the defendant's probation with an extension because he could not pay the restitution within three years. (*Cookson, supra*, 54 Cal.3d at p. 1097.) In so doing, the *Cookson* court noted the following: "A change in circumstances is required before a court has jurisdiction to extend or otherwise modify probation. As we held in *In re Clark* (1959) 51 Cal.2d 838 [337 P.2d 67], 'An order modifying the terms of probation *based upon the same facts* as the original order granting probation is in excess of the jurisdiction of the court, for the reason that there is no factual basis to support it.' [Citation.]" (*Id.* at p. 1095.)

At issue in *Cookson* was the lower court's authority to extend the length of the probationary term. (*Cookson, supra*, 54 Cal.3d at p. 1095.) Nevertheless,

the *Cookson* court relied on *In re Clark, supra,* 51 Cal.2d 838, in which the defendant pleaded guilty to one count of violating Penal Code section 288a. The trial judge suspended imposition of sentence for five years (until June 1, 1957) and imposed certain conditions of probation. The defendant violated probation for a misdemeanor conviction of another violation of Penal Code section 288a. The trial judge held a hearing to modify probation and ordered that the defendant be released from custody and that the terms of the original probation order remain in effect. Subsequently, another judge, on ex parte application from the probation officer, purportedly extended the term of the probation three years to June 1, 1960. The facts upon which he acted were the same as those upon which the trial judge had acted originally. Thereafter, the defendant suffered another misdemeanor conviction for violating Penal Code section 288a and was taken into custody for a violation of probation. The defendant sought habeas corpus relief on the ground that the order of the second judge, purportedly extending the term of probation, was made without the court's having jurisdiction and that his probationary period had therefore expired. (*Clark,* at pp. 838–839.)

■ Ultimately, in *In re Clark, supra,* 51 Cal.2d 838, the California Supreme Court found that the second judge's order was void because the court exceeded its jurisdiction in making it. (*Id.* at p. 840.) In so doing, the Supreme Court held, "An order modifying the *terms of probation* based upon the same facts as the original order granting probation is in excess of the jurisdiction of the court, for the reason that there is no factual basis to support it." (*Ibid.,* italics added.) Again, by "*terms of probation*" the Supreme Court was talking about the length of the probationary term, not a condition of probation.

Nevertheless, in *In re Clark,* the California Supreme Court relied on *In re Bine* (1957) 47 Cal.2d 814 [306 P.2d 445], a case in which the lower court, on its own motion, modified the defendant's probation to vacate a fine that the court had imposed originally and to add a six-month county jail term. At the hearing to modify probation, no evidence was presented as to the defendant that was not before the court at the original probation hearing. Thus, the court reached a different conclusion based upon the same facts. (*Id.* at p. 816.) The California Supreme Court held that the order modifying probation "was made in excess of the jurisdiction of the court for the reason that there was no factual basis to support it." (*Id.* at p. 818.) To put it another way, there were no changed circumstances upon which to base a modification of a condition of probation.

Accordingly, we conclude that *Cookson, supra,* 54 Cal.3d 1091, and the aforementioned cases provide authority for the superior court to modify a term of probation upon a showing of a change in circumstances. However, in

none of the aforementioned cases was the lower court trying to modify a jail term imposed and already served.

■ Even if this court assumed for the sake of argument that *Cookson* provides authority for the court to modify a jail term that has already been served, we would not find a change of circumstances in this case. Respondent asserts, "the mere fact that [he] was willing to waive custody credits was a change in circumstance authorizing modification." A change in circumstance equates to a "fact" " 'not available at the time of the original order.' " (*Cookson, supra*, 54 Cal.3d at p. 1095.) The fact that respondent was willing to waive his custody credits is not a change in circumstance at all. We are certain that if respondent had had the option of waiving custody credits in the first instance to avoid deportation he would have "jumped" at that offer.

The second change in circumstance offered by respondent was the fact that he had not paid restitution. We are not persuaded. Respondent had not paid full restitution at the beginning of his jail term and he had not paid full restitution at the time his jail term was reduced. Unlike the defendant in *Cookson*, where the court determined "that a change in circumstance could be found in a fact 'not available at the time of the original order,' namely, 'that setting the pay schedule consistent with defendant's ability to pay had resulted in defendant's inability to pay full restitution as contemplated within the original period of probation' " (*Cookson, supra*, 54 Cal.3d at p. 1095), respondent did not have a pay schedule inconsistent with his ability to pay.[8]

■ Presumably, since the fact of adverse collateral consequences on defendant's life resulting from a felony conviction is among the relevant factors that a court may consider in granting or denying probation in the first place (Cal. Rules of Court, rule 4.414(b)(6)), it is within a court's power to structure a grant of probation in an attempt to avoid adverse immigration consequences for the defendant. ■ "The safety of the public . . . ; the nature of the offense; the interests of justice, including punishment, reintegration of the offender into the community, and enforcement of conditions of probation; *the loss to the victim*; and *the needs of the defendant*" are "the primary considerations in the granting of probation." (Pen. Code, § 1202.7, italics added.) A court granting probation might choose to limit the number of days served in local custody as a condition of probation to enable a defendant to avoid deportation *if* doing so is consistent with these considerations. (See

[8] The court was aware from the probation officer's report that when the police arrived at respondent's residence they found numerous items such as a Chevrolet truck registered in respondent's name, a gocart, numerous cellular telephones and a satellite television system. Furthermore, respondent's daughter drove her father to the police station in a new Chrysler Sebring, the cost of which had been paid in full. As the court noted at the September 18, 2007 hearing, it was the court's hope that respondent's family "would sell the vehicles and get their father out of jail."

*People v. Bautista* (2004) 115 Cal.App.4th 229, 240, fn. 8 [8 Cal.Rptr.3d 862] [a technique available to a defendant to avoid adverse immigration consequences is to obtain a disposition of 364 days instead of 365 days].) However, respondent has not provided this court with any authority for the court to change a jail term that has already been served in order to prevent a defendant's deportation.

We recognize that the court in this case went to great lengths to disavow that that was why the court modified respondent's jail term. The court stated repeatedly that the only reason for considering a reduction in respondent's jail term was to motivate him to pay restitution. However, the court's reasoning does not withstand scrutiny. Respondent was placed on felony probation for a period of five years on May 2, 2006. On October 2, 2007, when the court modified respondent's jail term, respondent still had three and a half years left on his probation grant and outstanding victim restitution of somewhere between $20,000 and $22,000. An original sentence of 365 days in county jail had not motivated respondent to pay full restitution. Thus, there is no reason to believe that the court's ability to order more jail time, which the waiver of custody credits would have provided to the court, was going to achieve the court's stated purpose.

 Respondent always had the threat of prison time hanging over his head on a finding of willful failure to pay restitution. A trial court may revoke probation for failure to pay restitution if it finds, based upon sufficient evidence, that the defendant willfully failed to pay and has the ability to pay. (Pen. Code, § 1203.2, subd. (a); *Bearden v. Georgia* (1983) 461 U.S. 660, 672 [76 L.Ed.2d 221, 103 S.Ct. 2064].) "If these circumstances appear at the formal revocation hearing, the court is authorized to revoke probation and . . . order imprisonment . . . ." (*People v. Medeiros* (1994) 25 Cal.App.4th 1260, 1267 [31 Cal.Rptr.2d 83].) Of course, then respondent would have been subject to deportation for a prison term of at least 16 months.[9] Thus, all that the court's order was designed to achieve was the continued presence of respondent in this country in the vague hope that he would finally pay restitution.

 In conclusion, the Legislature has made it clear that a conviction may be used for future enhancement purposes even though provisions of the Penal Code allow defendants who have successfully completed a probationary term to withdraw a guilty plea, enter a plea of not guilty, and have the information dismissed. (Pen. Code, § 1203.4, subd. (a).)

---

[9] Respondent was charged with four felony counts and pleaded no contest to one felony count. Accordingly, he faced a prison sentence of at least 16 months in state prison if his probation was revoked for willful failure to pay restitution. (Pen. Code, §§ 489, subd. (a), 18.)

Furthermore, as the *Borja* court noted, "Federal courts have also held that such a prior conviction may be considered for immigration matters. [Citation.] To permit a court . . . after a person has pleaded guilty [or no contest] and the term has been served, to obtain a retroactive order altering the record in a manner so that the conviction could not be . . . used, violates that Legislature's clear intent and the rulings of the federal courts that prior convictions be available for future use, including, pursuant to the federal decisions, immigration consequences." (*Borja, supra,* 95 Cal.App.4th at p. 487.)

### *Disposition*

The order modifying the length of respondent's jail term is reversed.

Rushing, P. J., and Premo, J., concurred.

Respondent's petition for review by the Supreme Court was denied June 10, 2009, S172108.