Filed 9/12/23  P. v. Mojica  CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MANUEL MOJICA,<br><br>Defendant and Appellant. | F085044<br><br>(Super. Ct. No. F22900450)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Jeffrey Y. Hamilton, Jr., Judge.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Detjen, Acting P. J., Franson, J. and Meehan, J.

Defendant Manuel Mojica pled no contest to attempted second degree robbery and admitted that he personally discharged a firearm in the commission of the offense and had suffered a prior "strike" conviction within the meaning of the "Three Strikes" law (Pen. Code, §§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d))[1] after the trial court denied his pretrial evidentiary motion and motion to quash and traverse search warrants.

Defendant's appellate counsel filed a brief that summarizes the facts with citations to the record, raises no issues, and asks this court to independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436.) Defendant's counsel has also identified four issues that defendant would like the court to consider in reviewing the record: (1) whether the trial court erred in denying his motion to suppress the photo lineup (if not forfeited); (2) whether the court erred in denying defendant's motion to quash and traverse warrants (if not forfeited); if the first two claims are forfeited, (3) whether defendant's trial counsel was ineffective for failing to preserve the issues; and (4) whether the court abused its discretion or breached the plea agreement by withdrawing its approval for the plea agreement. We have conducted an independent review. Finding that the issues defendant identified have no merit and no reasonably arguable legal or factual issues exist, we affirm.

## PROCEDURAL SUMMARY

On January 21, 2022, the Fresno County District Attorney filed a complaint charging defendant with attempted second degree robbery (§§ 211, 664, subd. (a); count 1), two counts of possession of a firearm by a felon (§ 29800, subd. (a)(1); counts 2 & 4), and two counts of possession of ammunition by a prohibited person (§ 30305, subd. (a)(1); counts 3 & 5). As to count 1, the complaint further alleged that a principal in the offense personally discharged a firearm (§ 12022.53, subds. (c) & (e)(1)). As to all

---

[1]    All further statutory references are to the Penal Code except as otherwise noted.

counts, the complaint alleged that defendant had suffered a prior strike conviction (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)).

On August 4, 2022, defendant filed a motion to traverse search warrants and suppress the evidence seized pursuant to those warrants.  On the same date, defendant also filed a motion to suppress evidence of a purportedly suggestive photo lineup identification.  He further moved in the same motion to permit defendant to be concealed behind a partition at the preliminary hearing until the eyewitnesses were examined to avoid the witnesses' description of the suspect being tainted by their viewing of defendant pursuant to *People v. Harmon* (1989) 215 Cal.App.3d 552, and then to be identified only as part of a lineup pursuant to *Evans v. Superior Court* (1974) 11 Cal.3d 617.

On August 9, 2022, the People filed oppositions to both motions.

On August 26, 2022, the trial court denied both of defendant's motions in full.  On the same date, after all evidence was presented at the preliminary hearing, but before defendant was held to answer, defendant pled no contest to count 1, admitted personally discharging a firearm in the commission of count 1, and admitted the prior strike conviction allegation pursuant to a negotiated plea agreement.  In exchange for his plea, counts 2 through 5 were dismissed on the People's motion.  The court indicated it would impose an eight-year term of imprisonment (the middle term of two years on count 1, doubled due to the prior strike conviction, plus a four-year firearm enhancement).

On September 16, 2022, the trial court informed defendant that it would not impose the indicated sentence because the indicated sentence, initially expressed before the preliminary hearing, was given without an understanding of the discharge of a firearm allegation.

On September 30, 2022, the trial court indicated a 19-year term of imprisonment (the middle term of two years on count 1, doubled due to the prior strike conviction, plus a 10-year firearm enhancement, plus a five-year prior serious felony conviction

enhancement). Defendant agreed. The court granted the People's motion to file an amended complaint. The Fresno County District Attorney then filed a first amended complaint charging defendant with attempted second degree robbery (§§ 211, 664, subd. (a); count 1), two counts of possession of a firearm by a felon (§ 29800, subd. (a)(1); counts 2 & 4), and two counts of possession of ammunition by a prohibited person (§ 30305, subd. (a)(1); counts 3 & 5). As to count 1, the amended complaint further alleged that defendant personally used a firearm (§ 12022.53, subd. (b)). As to all counts, the amended information alleged that defendant had suffered a prior strike conviction (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), which also qualified as a serious felony conviction (§ 667, subd. (a)).

On the same date, defendant pled no contest on count 1, admitted the personal use of a firearm allegation, admitted the prior strike conviction allegation, and admitted the prior serious felony conviction allegation pursuant to a negotiated plea agreement. Pursuant to the agreement, the trial court dismissed counts 2 through 5 on the People's motion. The court then imposed the indicated sentence of 19 years

On October 3, 2022, defendant filed a notice of appeal. He checked the box indicating that the "appeal is based on the sentence or other matters occurring after the plea that do not affect the validity of the plea."

4.

## FACTUAL BASIS[2]

### Preliminary Hearing

On December 4, 2021, a man attempted to rob[3] D.H. while he worked at a liquor store. A man wearing a facemask entered the store, brandished a gun at him, and said, " 'Give me the money.' " The interaction lasted approximately two minutes.[4]

Fresno police officers responded to the liquor store on the same date. D.H. showed them security camera footage of the incident. D.H. described that his assailant's "complexion was white, but [he was] neither white nor black." D.H. told the officers he was not sure whether his assailant had tattoos.

On December 28, 2021, Fresno Police Detective Natalia Camarena showed D.H. a photographic lineup. Carr created the lineup based on his observation of defendant in the security video.[5] From his review of the video, Carr noted that the assailant had two tattoos—one above his left eyebrow and one on the right side of his neck. Carr estimated that the photo of defendant had been taken within the previous three years, but it did not contain a tattoo above defendant's left eye that he had at the time of his arrest. The other photos in the lineup were Fresno County booking photos. Along with the

---

[2]    The parties stipulated that the trial court could rely on the preliminary hearing transcript to find a factual basis for defendant's plea. A portion of our summary of the facts is therefore drawn from the probation officer's report. Because defendant also asks us to consider whether the trial court erred in denying defendant's motion to traverse the warrant, we also summarize the evidence presented at that hearing.

[3]    D.H. testified that he was robbed. We note that nothing was taken by force from D.H. and the assailants left empty-handed.

[4]    Fresno Police Detective Nathan Carr testified that the video depicting defendant in the liquor store was approximately three minutes but the interaction between defendant and D.H. lasted approximately 20 seconds.

[5]    Carr was unaware of D.H.'s description of the assailant being white complected when he created the photo lineup.

5.

photographic lineup, D.H. was read[6] an admonishment[7] regarding the photographs he would be shown. D.H. testified that he understood the admonition. D.H. identified defendant as the person who attempted to rob him in the photographic lineup with the officers and in the courtroom. D.H. noted that the background of defendant's photo in the lineup was different from the other photos, but it played no part in D.H.'s identification of defendant. Carr also commented that the background of defendant's photo was darker than the other photos but the difference was not intentional. D.H. selected the photo of defendant because he recognized defendant from the photo. D.H. testified, "[w]ithout a doubt," defendant was the person who attempted to rob him. D.H. testified his only uncertainty was whether as to the color of the shirt the assailant was wearing on the date of the robbery.

Camarena audio recorded the discussion with D.H. during his review of the December 28, 2021 photographic lineup. D.H. narrowed the assailant down to two men in the lineup. Camarena asked D.H. if one of the two men stood out more than the other. D.H. said that he was 90 percent sure that defendant was the assailant. Carr and

---

**6**  D.H. did not speak or read English. His cousin who spoke English fluently and D.H.'s native language and dialect translated the admonition to him.

**7**  The admonition read in full:

"In a moment, I am going to show you a group of photographs. This group of photographs may or may not contain a picture of the person who committed the crime now being investigated. It is as equally important to exclude innocent persons, as it is to identify a perpetrator. Keep in mind that hair styles, beards, and moustaches may be easily changed. Also, photographs may not always depict the true complexion of a person—it may be lighter or darker than shown in the photo. Pay no attention to any markings or numbers that may appear on the photos or any other differences in the type or style of the photographs. When you have looked at all the photos, tell me whether or not you see the person who committed the crime. This investigation will continue regardless if an identification is made. Do not tell other witnesses that you have or have not identified anyone."

Camarena testified that neither pressured D.H. to select a photo. Camarena testified that the photo lineup was a blind administration—i.e., that she had no knowledge of the case or investigation when she provided the lineup to D.H.

**Hearing on Motion to Traverse Warrant**

On December 4, 2021, Carr was the robbery detective dispatched by the Fresno Police Department to the robbery at the liquor store in this case. When he arrived at the liquor store, he was briefed by the night detective and primary officer. He then assisted those officers in downloading and reviewing the security camera footage from the liquor store. The surveillance system also recorded audio. He described the robbery as it appeared in the security camera footage:

> "[At] [a]pproximately 5:50 p.m. on … December 4, [2021,] two subjects are seen walking south … towards the store. They linger in front of the store for a short time. The first subject enters the store, stays inside, doesn't purchase anything, doesn't do anything, then stands behind the register where the customers belong. [D.H.] is helping another customer, and when the register opens, the second subject enters the store. He is armed with a black semi-automatic handgun in his left hand. He opens the partition that separates the customer area from the employee area where the register is. The subject with the guns tells [D.H.] to not move and give him the money. [D.H.] backs away and slams the register shut. The subject with the gun backs up and then reaches forward a couple inches and shoots one time in the direction of [D.H.]. Both subjects flee the store northbound and are seen leaving about 5:52 p.m."

D.H. told Carr that the gunman might have previously been a customer and might have driven a white pickup truck of unknown make and model. A bullet slug was recovered from a box behind where D.H. was standing. A bullet casing was also recovered at the scene. Carr later had the bullet casing compared in the National Integrated Ballistic Network system and received a match related to a negligent discharge of a firearm call in September 2021 in central Fresno.

Carr described the gunman based on the security camera footage. He was a Hispanic male, wearing a long-sleeved black shirt, black pants, black sandals, and a black

COVID mask. His hair was "bushy" and Carr "clearly [saw] a Cincinnati Reds 'C' on the right side of his neck." Carr also saw what appeared to be a tattoo above his left eye.

On December 27, 2021, Carr discovered another negligent discharge of a firearm report at an apartment complex in central Fresno on December 22, 2021, roughly half a mile from the attempted robbery and nearby the prior negligent discharge report. The reporting party on the second negligent discharge call reported that her brother, defendant, had accidentally discharged a firearm inside of her apartment. The officers who responded to the call found blood outside of the apartment, and a bullet hole in the bedroom, and may have found a bullet slug. Carr conducted a records check on defendant and saw that defendant's appearance matched the suspect in the attempted robbery—the hair, large "C" tattoo on the neck, and tattoo above the left eye all appeared to match.

Carr prepared a photographic lineup and D.H. identified defendant as his assailant. Carr then authored and obtained a search warrant for defendant's social media data. Carr reviewed defendant's social media messages. In those messages, defendant admitted having accidentally discharged a firearm on December 22, 2021, but Carr found no messages regarding the attempted robbery. Carr next authored and obtained a "ping warrant" that would provide him access to the location of defendant's cell phone.[8] Using that information, other officers arrested defendant. When defendant was arrested, one of the other detectives spoke to defendant's girlfriend who told the detective that the other suspect in the attempted robbery was probably defendant's cousin who went by the name of "Much."

Carr next authored and obtained a warrant to search the phone defendant had in his possession at the time of his arrest. Carr found a contact in defendant's phone labeled

---

[8]     Carr explained that he believed the cell phone number belonged to defendant because defendant had sent a social media message telling another person that he could be contacted at that phone number.

"Three Much" and reviewed text messages from the date of the attempted robbery and the following days. Carr described that "[t]he two appeared panicked, like something bad had happened, and [defendant] had responded to Three Much [approximately three hours after the attempted robbery], saying that 'I hope they did not see my neck tattoos.' "

Three Much was also arrested in relation to this case.[9] In a shoebox in his bedroom, officers found a handgun. A ballistics test was performed and the firearm was a match to the shell casings from the attempted robbery and the first negligent discharge report.

Carr also reviewed jail calls in relation to this case. He found a call between Three Much and Three Much's brother on December 5, 2021. In that call, Three Much told his brother "that he and C Mac, which [Carr knew to be] the alias of [defendant], were getting jiggy with it, were playing GTA[10] last night and C Mac had killed somebody during a robbery."[11]

## DISCUSSION

As noted above, defendant's appellate counsel filed a brief pursuant to *People v. Wende*, *supra*, 25 Cal.3d 436, asserting she could not identify any arguable issues in this case. She also specifically asked us to consider four issues:

> "[(1)] To the extent the issue is not deemed forfeited, whether the court erred in denying appellant's motion to suppress identification evidence based on an unduly suggestive photo line-up and a failure to comply with section 859.7's requirement that the line-up be based on the complaining witness' description of the perpetrator;

---

**9** Three Much did not have a "C" tattoo on his neck or any tattoos on his face.

**10** Carr explained that GTA is slang for "Grand Theft Auto," the video game.

**11** In the same call, the person referred to as C Mac was identified as being incarcerated for attempted robbery with a bail amount of $580,000, which was the exact charge and bail amount for which defendant was in custody. "C Mac" was also listed as defendant's alias on his social media account.

9.

"[(2)] To the extent the issue is not deemed forfeited, whether the court erred in denying appellant's motion to quash and traverse the warrants where the record reflects that the probable cause declarations' description of the perpetrator was based on law enforcement's review of the surveillance video and omitted the complaining witness' description of the perpetrator as a white male;

"[(3)] Alternatively, if the section 1538.5 motions' issues are deemed forfeited, to the extent cognizable on appeal, the ineffective assistance of counsel in failing to renew the suppression issues to preserve appellant's right for appellate review; and

"[(4)] To the extent cognizable on appeal, whether the court abused its discretion and/or breached the terms of the negotiated plea agreement by improperly withdrawing its indicated sentence after entry of the plea, requiring appellant to enter a new plea for a much lengthier term."

Defendant was also provided an opportunity to submit a supplemental brief, but did not do so.

Because defendant indicated in his notice of appeal that the appeal is based on the sentence and other matters occurring after the plea that do not affect the validity of the plea, did not check the box indicating that the appeal was brought to challenge a motion to suppress evidence under section 1538.5, and did not obtain a certificate of probable cause, the issues he identified are not cognizable on appeal. (Cal. Rules of Court, rule 8.304(b).) Nevertheless, because the record before us on those issues is complete, we review all of the issues identified in the *Wende* brief on their merits to forestall any later claims of ineffective assistance of counsel. (See *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 [an appellate court has authority to reach a claim not cognizable on appeal]; *People v. Crittenden* (1994) 9 Cal.4th 83, 146 [reviewing court may exercise discretion to consider claims not cognizable on appeal to forestall ineffective assistance of counsel arguments].)

### A.  Motion to Suppress

As to the first issue we are asked to review, we find no error. Section 859.7 does not mandate that an officer's creation of a photo lineup be based exclusively upon an

10.

eyewitness's description of a suspect. That Carr relied upon his own review of the surveillance camera footage in preparing the lineup did not require suppression of the identification evidence. The relevant portion of section 859.7 merely requires that "[p]rior to conducing the identification procedure … the eyewitness shall provide the description of the perpetrator of the offense." (§ 859.7, subd. (a)(1).) D.H. did provide a description in this case. Further, the lineup contained an admonition that satisfied the instructional requirements of section 859.7, subdivision (a)(4).

Next, we consider whether the lineup was unduly suggestive because the background of defendant's photo was a different color from the other photos. Our high court recently explained: a due process violation occurs " ' "only if the identification procedure is 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' " ' [Citation.] If we determine the procedure was suggestive, no due process violation arises if ' " 'the identification itself was nevertheless reliable under the totality of the circumstances.' " ' [Citation.] In assessing the totality of the circumstances, we consider ' "such factors as the opportunity of the witness to view the suspect at the time of the offense, the witness's degree of attention at the time of the offense, the accuracy of his or her prior description of the suspect, the level of certainty demonstrated at the time of the identification, and the lapse of time between the offense and the identification." [Citations.] "Against these factors is to be weighed the corrupting effect of the suggestive identification itself." [Citation.]' " (*People v. Wilson* (2021) 11 Cal.5th 259, 283.)

In *People v. Clark* (2016) 63 Cal.4th 522, 557, the background color of the defendant's photo in a lineup was different from the others. Our Supreme Court explained that the difference "did not render the photographic lineup unduly suggestive, particularly in light of the express admonition to [the eyewitness] that he should pay no attention to whether the photos were in color, in black and white, or to any other difference in type or style of the photographs." (*Ibid.*) In this case, the background on

11.

defendant's photo was a noticeably different color than the other photos and the admonition in this case also directed the witness not to consider any differences in the type or style of the photographs. In light of the admonition, the lineup was not unduly suggestive.

However, even if we were to assume the photo lineup was unduly suggestive, D.H.'s identification of defendant was otherwise reliable. D.H. testified that the difference in background color did not impact his identification of defendant; he identified defendant because he recognized him. Further, the time between D.H.'s initial interaction with defendant and his identification of defendant in the lineup was less than a month.

## B. Motion to Quash and Traverse Warrants

Next, defendant asks us to consider whether the trial court erred in denying his motion to quash and traverse the warrants in light of the purported inconsistency between Carr's description of the suspect from the surveillance camera footage and D.H.'s description of a white complected male, and the omission of the latter from the warrant affidavit. We find no error.

A motion to traverse a warrant challenges the completeness and truthfulness of the warrant affidavit's probable cause showing. (*Franks v. Delaware* (1978) 438 U.S. 154, 155–156.) A defendant who challenges a warrant based on factual omissions in the affidavit must show that the omissions were material to the probable cause determination. (*People v. Panah* (2005) 35 Cal.4th 395, 456.) Facts omitted from a warrant affidavit are "not material" if "there is no 'substantial possibility they would have altered a reasonable magistrate's probable cause determination,' and their omission did not 'make the affidavit[s] substantially misleading.' " (*People v. Eubanks* (2011) 53 Cal.4th 110, 136, italics omitted; accord, *People v. Sandoval* (2015) 62 Cal.4th 394, 409; *People v. Scott* (2011) 52 Cal.4th 452, 484.) In other words, in order to be material, the omitted facts

12.

must negate a finding of probable cause. (*Eubanks*, at p. 136.) "We review the denial of a *Franks* hearing de novo." (*Panah*, at p. 457.)

Defendant asks us to consider whether the trial court erred in denying his motion to traverse and quash the warrants because Carr relied upon his own observation of the suspect in the surveillance camera footage to describe the suspect as a "Hispanic male with short bushy hair …[,] a large 'C' tattoo on the right side of his neck[,] and an unknown tattoo above his left eye," and omitted D.H.'s description of the suspect as a white complected male. We conclude it did not. Because we reach the merits of the issue and find no error, we do not reach the issue identified in the alternative regarding whether defendant's trial counsel was ineffective in failing to preserve the issue.

The first warrant sought and obtained in this case was for authorization of a residential arrest in a so-called *Ramey* warrant (*People v. Ramey* (1976) 16 Cal.3d 263; now codified at § 817). In the warrant affidavit, Carr described his review of the security camera footage and the description of the suspects he assembled therefrom: the gunman had short, bushy hair, a "C" tattoo on the right side of his neck, and an unknown tattoo above his left eye. The warrant was clear that the description of the suspect came from the footage. He also described the ballistics match of the shell casing found at the robbery and the scene of the first negligent discharge (near defendant's sister's home), as well the report of defendant's negligent discharge in his sister's apartment. He then also explained that D.H. had identified defendant in the photographic lineup. If Carr had included D.H.'s description of the suspect as white complected, the outcome would have been the same—probable cause existed to issue the warrant. The tattoo matches, the ballistics match, and the positive identification by D.H. provided probable cause that would not have been negated by D.H.'s initial comment that the suspected had a white complexion. The trial court therefore properly denied defendant's motion to quash the *Ramey* warrant and all subsequent warrants (which were challenged on the same basis). (*People v. Eubanks*, *supra*, 53 Cal.4th at p. 136 [trial court properly denied motion to

13.

quash warrants and suppress evidence where omitted facts would not have affected the issuance of the warrants].)

### C. Trial Court's Withdrawal of Approval for the First Plea Agreement

Third, defendant asks us to consider whether the trial court abused its discretion in withdrawing approval for his first plea agreement that would have resulted in an eight-year term of imprisonment and instead sentencing defendant under a second plea agreement that provided for a 19-year term of imprisonment. We conclude it did not.

Defendant appeared before three judges in this case. At the September 16, 2022 hearing, the judge who withdrew approval for the plea agreement explained that "[t]here were some miscommunications between the prelim[inary hearing] judge and [the judge who withdrew approval for the plea agreement]" about the indicated sentence. The [judge who withdrew approval for the plea agreement] further explained at the September 30, 2022 hearing, "in this case the [c]ourt heard the preliminary hearing, but prior to making a holding order discussed settling the case, based on indicated that had been given by [the first judge assigned to the case]. There was some misunderstanding about the indicated, which was eight years, that was prior to the prelim[inary hearing], prior to learning about the gun testimony, et cetera, and, as a result, [the judge first assigned to the case] was not willing to follow that indicated, nor was th[e court that withdrew approval for the plea agreement]."

Section 1192.5 establishes that after a trial court has indicated its initial approval of a plea agreement, "it may, at the time set for the hearing on the … pronouncement of judgment, withdraw its approval in … light of further consideration of the matter." (§ 1192.5, subd. (c).) In criminal cases, the pronouncement of judgment occurs " 'when the trial court orally pronounces sentence.' " (*People v. Mendoza* (2009) 171 Cal.App.4th 1142, 1150.) Thus, under section 1192.5, a court has broad discretion to withdraw its original approval of a negotiated plea prior to sentencing. (*People v. Silva* (2016) 247 Cal.App.4th 578, 588.) "The court's discretion to do so is recognized as

14.

" 'near-plenary.' " (*People v. Stamps* (2020) 9 Cal.5th 685, 708.) " 'Generally, a trial court may exercise its discretion to withdraw approval of a plea bargain because: (1) it believes the agreement is "unfair" [citation]; (2) new facts have come to light; (3) the court has become more fully informed about the case; or (4) when, after further consideration, the court concludes that the agreement is " ' "not in the best interests of society" ' " [citation]. But this list is not exhaustive.' " (*Id*. at p. 706.) We review the decision to withdraw approval of a plea bargain for an abuse of discretion, reversing only if the decision is outside the bounds of reason. (*People v. Mora-Duran* (2020) 45 Cal.App.5th 589, 596.)

In this case, the trial court explained that the approval of the plea agreement was based upon the indication of approval by the first judge assigned to the case. However, that judge was not aware of the firearm-related testimony that was admitted at the preliminary hearing. Upon learning of that testimony, the first judge assigned to the case as well as the judge who withdrew approval for the plea agreement both agreed that the sentence was not appropriate. This exercise of discretion to withdraw approval for the plea agreement falls squarely within near-plenary discretion to withdraw approval for a plea when the court has become more fully informed about the case. We find no abuse of discretion.

### D. *Wende* Review

Beyond the issues specifically identified by defendant's counsel, we have completed a thorough review of the record and we agree with defendant's appellate counsel there are no arguable issues in this case. Defendant entered a plea agreement, he was sentenced to a term of imprisonment as set out in the plea agreement, and the remainder of the terms were complied with by both parties. He was fully advised of the consequences of his plea, and he waived his constitutional rights. There is nothing in this record to suggest any error occurred.

## DISPOSITION

The judgment is affirmed.