[No. A063911. First Dist., Div. Two. Nov. 16, 1994.]

THE PEOPLE, Plaintiff and Respondent v.
JOSE BARRAZA, Defendant and Appellant.

**COUNSEL**

Norton Tooby, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, Ronald A. Bass and Mark Howell, Deputy Attorneys General, Arlo Smith, District Attorney, and Michael Hartmann, Assistant District Attorney, for Plaintiff and Respondent.

OPINION

**KLINE, P. J.**—With the support of the district attorney who successfully prosecuted him, appellant Jose Barraza moves for "stipulated reversal" of his misdemeanor conviction. We shall deny the motion.

After an eight-day trial in the San Francisco Superior Court, appellant was acquitted of attempted murder, attempted voluntary manslaughter and assault with a deadly weapon, but was convicted of the misdemeanor offense of carrying a loaded firearm in public. (Pen. Code, § 12031, subd. (a).) A timely notice of appeal was filed. Briefing in this court has not commenced. Appellant has at the present time served his 60-day jail sentence and is on probation.

The motion papers represent that appellant is a Mexican citizen who has been a lawful resident of the United States for 16 years and has suffered no prior criminal convictions. Because the offense of which he was convicted involves a firearm, federal law assertedly compels immigration authorities to revoke appellant's permanent resident status, deport him and permanently exclude him from returning to the United States. (See 8 U.S.C. § 1251(a)(2)(C).)[1] Appellant's counsel declares that "Mr. Barraza's innocent family will either itself be deported to Mexico, or be separated from Mr. Barraza and possibly be thrown onto welfare. The drastic immigration consequences require that Mr. Barraza prosecute this appeal from his misdemeanor conviction."

Apparently in order to help him avoid deportation, the district attorney who prosecuted appellant stipulated that, "in order to settle the appeal in this matter and the underlying criminal case," the conviction of misdemeanor possession of a loaded firearm (Pen. Code, § 12031, subd. (a)) be vacated and the clerk of the superior court "directed to file an amended abstract of judgment reflecting that Mr. Barraza was convicted of the misdemeanor of assault by means of force likely to cause great bodily injury in violation of Penal Code § 245(a)(1), *nunc pro tunc* as of the date on the current abstract of judgment, and received the same sentence . . . ."[2] The proposed "settlement" subjects appellant to a one-year maximum jail sentence in the event he violates probation, which is twice the time he would serve for such a violation under the original judgment. The stipulation is, of course, contingent upon the approval of this court.

---

[1] This statute provides in material part that "Any alien . . . in the United States shall, upon the order of the Attorney General, be deported" if such person "at any time after entry is convicted under any law of . . . using, owning, possessing, or carrying in violation of any law, any weapon, part, or accessory which is a firearm . . . ."

[2] The office of the California Attorney General advised counsel for appellant that it takes "no position" on the propriety of the stipulation and that counsel should so inform the court.

## Discussion

The sole legal basis upon which appellant urges us to grant the motion for stipulated reversal and thereby effectuate the agreement of the parties is *Neary* v. *Regents of University of California* (1992) 3 Cal.4th 273 [10 Cal.Rptr.2d 859, 834 P.2d 119]. *Neary* was a civil case in which the court held that, "when the parties to an action agree to settle their dispute and as part of their settlement stipulate to a reversal of the trial court judgment, the Court of Appeal should grant their request for the stipulated reversal absent a showing of extraordinary circumstances that warrant an exception to this general rule." (*Id.*, at p. 284.)

█ Contrary to the view of the United States Supreme Court that "settlement does not justify vacatur of a judgment" (*U.S. Bancorp Mortgage Co.* v. *Bonner Mall Partnership* (1994) 513 U.S. __, __ [130 L.Ed.2d 233, 244, 115 S.Ct. 386, 393]), the California Supreme Court has established a "strong presumption in favor of allowing stipulated reversals," the state analog to vacatur. (*Neary* v. *Regents of University of California, supra,* 3 Cal.4th at p. 283.) In doing so, our high court explicitly rejected the idea that the reversal of a judgment not shown to be wrong as a condition of settlement would trivialize the work of the trial courts or undermine their integrity. (*Id.*, at pp. 281-282.) Stipulated reversal therefore cannot be denied in California courts on the principle, recently reiterated by a unanimous United States Supreme Court, that the judgments of a court, which are "presumptively correct" and "valuable" (513 U.S. at p. __ [130 L.Ed.2d at p. 243, 115 S.Ct. at p. 392]), " 'are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur.' " (*Ibid.*, quoting *Izumi Seimitsu Kogyo* v. *U.S. Philips* (1993) 510 U.S. __, __, [126 L.Ed.2d 396, 407, 114 S.Ct. 425] (dis. opn. of Stevens, J.).) Because vacatur as a condition of settlement is deemed inimical to "the orderly operation of the federal . . . system" (513 U.S at p. __ [130 L.Ed.2d at p. 243, 115 S.Ct. at p. 392]), such relief cannot be granted by federal courts absent a showing of "exceptional circumstances." (*Ibid.*) The situation is exactly the reverse in our courts, where such relief is thought to serve judicial interests[3] and therefore *must* be granted absent "extraordinary circumstances that weigh against allowing the stipulated reversal." (*Neary, supra,* at p. 285.)

---

[3]The *Neary* court concluded that stipulated reversal serves "[t]he courts' interest in disposing of unnecessary litigation." (*Neary* v. *Regents of University of California, supra,* 3 Cal.4th at p. 283.) According to *Neary*, ". . . the public interest . . . is served by the peaceful settlement of disputes and unclogging of court dockets." (*Ibid.*) The United States Supreme Court repudiated this view, pointing out that "while the availability of vacatur may facilitate settlement after the judgment under review has been rendered and certiorari granted (or appeal filed), it may *deter* settlement at an earlier stage. *Some* litigants, at least, may think it worthwhile to roll the dice rather than settle in the district court, or in the court of appeals, if, but only if, an unfavorable outcome can be washed away by a settlement-related vacatur. And

■ Appellant claims no such circumstances are presented by the instant request for stipulated reversal. In a declaration filed in support of the motion, appellant's counsel maintains that denial of stipulated reversal is unjustified by any public interest because the judgment "does not affect any important public rights or involve any illegal practices beyond the isolated misdemeanor conviction, and does not affect a significant number of persons not parties to the litigation." Appellant maintains that, on the contrary, granting stipulated reversal would in several ways actually *serve* the public interest.

First, "[t]here is potential savings of many thousands of dollars of public funds through settlement . . . , in terms of savings of court appointed attorney billing, expenses of the Attorney General's Office and the courts in obviating the need to write and read [numerous briefs and motions], the court's opinion in the case, and any possible Petitions, including Habeas Corpus, Rehearing, and Review." Secondly, appellant's "innocent family would be spared the potential of being thrown onto welfare since he would be required to be deported as a result of this minor conviction, and the public would be relieved of this public charge." Third, "[t]he government would be relieved of the expenses of deportation proceedings." Finally, "the public would be given twice the protection it now enjoys against the (unlikely) possibility of a probation violation."

Counsel for appellant maintains that "[s]ettlement of this case is really no different from the plea-bargaining that occurs in the trial courts of this state, in the sense of furthering the public interest by offering the potential for minimizing expensive litigation. By opening the door to settlements of criminal appeals, this case offers the potential to pave the way for major judicial economies. There is really no reason to force full expensive litigation of every criminal appeal, as has been the case thus far."

Though the disposition stipulated to by the parties would conserve judicial resources, and might otherwise eliminate various government expenditures, those are not the only relevant public interests. We recently held that stipulated reversal must be denied under the public interest exception where the judgment that would be reversed subjected the losing party, a real estate broker, to professional disciplinary proceedings. (*Norman I. Krug Real Estate Investments, Inc.* v. *Praszker* (1994) 22 Cal.App.4th 1814 [28 Cal.Rptr.2d 498].) We concluded "[i]t would be unconscionable to make it possible for a real estate broker who may have acted unethically to purchase

the judicial economies achieved by settlement at the district court level are ordinarily much more extensive than those achieved by settlement on appeal." (*U.S. Bancorp Mortgage Co.* v. *Bonner Mall Partnership, supra*, 513 U.S at p. __ [130 L.Ed.2d at p. 243, 115 S.Ct. at p. 393], italics in original.)

disciplinary immunity from one of the consequences of his impropriety." (*Id.*, at p. 1822.) Although the condition of settlement at issue here was not obtained for financial consideration, as in *Praszker* and most civil cases, it would nonetheless appear equally unjust to permit an alien convicted of a criminal offense involving the use of a firearm to avoid one of the legislatively prescribed consequences of such a criminal act absent any reason to question the correctness of the judgment. Moreover, any saving of judicial resources that might now result from stipulated reversal pales in comparison to that which would have been achieved by a conventional plea bargain prior to trial.[4] In any event, we need not determine whether allowing stipulated reversal in this case would offend any public interest, or balance competing interests, because there is a more fundamental reason the motion must be denied.

Even indulging the very questionable assumption that *Neary* applies to criminal cases,[5] which neither the Supreme Court nor any other court has ever suggested, the motion before us seeks a remedy substantially different from that authorized by *Neary*.

Appellant does not seek reversal of the judgment in this case, the civil remedy approved in *Neary*, nor merely the vacating of that judgment. The parties' "settlement," which (as appellant acknowledges) is really no more than a postjudgment plea bargain, does not purport to simply reverse or vacate the judgment of conviction or otherwise exonerate appellant of criminal responsibility. The district attorney has stipulated that, if the bargain is approved and implemented by this court, a judgment convicting appellant of misdemeanor assault in violation of Penal Code section 245, subdivision (a)(1), may replace the different judgment imposed by the trial court. The substitution of one adverse judgment for another is not, as near as

---

[4]Penal Code section 1192.7 ordinarily prohibits plea bargaining in cases, such as this one, in which "the indictment or information charges any serious felony, [or] any felony in which it is alleged that a firearm was personally used by the defendant . . . ." Section 1192.7 provides that a plea bargain may be entered in such a case, however, "where there is insufficient evidence to prove the people's case." As appellant was acquitted of all felony charges, a realistic prosecutorial assessment of this case might have warranted use of this exception.

[5]Though *Neary* is not explicitly limited to the civil sphere, it is hard to imagine the Supreme Court contemplated that stipulated reversal would be appropriate in criminal cases. Describing *Neary* as "an ordinary civil action[]" (*Neary* v. *Regents of University of California, supra*, 3 Cal.4th at p. 280), the court observed that " '[i]n all civil litigation, the judicial decree is not the end but the means. At the end of the rainbow lies not a judgment, but some action (or cessation of action) by the defendant that the judgment produces—the payment of damages, or some specific performance, or the termination of some conduct. Redress is sought *through* the court, but *from* the defendant. . . .' " (*Neary, supra*, at p. 282, quoting *Hewitt* v. *Helms* (1987) 482 U.S. 755, 761 [96 L.Ed.2d 654, 661, 107 S.Ct. 2672], italics in original.) This is obviously not true of the judgment in a criminal case.

we can tell, what the *Neary* court had in mind, nor is it a practice for which there is other authority.

"Assuming the validity of a final judgment of conviction, any entitlement to postconviction relief, and the form thereof, is governed by statute." (*People* v. *Mendez* (1991) 234 Cal.App.3d 1773, 1778 [286 Cal.Rptr. 216].) So far as we are aware, the Legislature has established only one such avenue for an adult, like appellant, convicted of a felony or misdemeanor who has been admitted to probation and not committed to prison, California Youth Authority or other state institutions. Penal Code section 1203.4 permits a trial court to set aside a verdict of guilty and "thereupon dismiss the accusations or information against the defendant." With certain specified exceptions, a defendant granted such relief "shall thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been convicted . . . ."[6] ■ Expungement under this statute "does not eradicate a conviction or purge a defendant of the guilt established thereby . . . . It merely frees the convicted felon from certain 'penalties and disabilities' of a criminal or like nature." (*Adams* v. *County of Sacramento* (1991) 235 Cal.App.3d 872, 877-878 [1 Cal.Rptr.2d 138].)[7]

■ We do not know whether the relief from deportation appellant seeks could have been provided under Penal Code section 1203.4 and deem

[6]The only express exceptions to the relief from disabilities allowed under Penal Code section 1203.4 are (1) that "in any subsequent prosecution of the defendant for any other offense, the prior conviction may be pleaded and proved and shall have the same effect as if probation had not been granted and the accusation or information dismissed," and (2) ". . . the order does not relieve [the defendant] of the obligation to disclose the conviction in response to any direct question contained in any questionnaire or application for public office, for licensure by any state or local agency, or for contracting with the California State Lottery." (Pen. Code, § 1203.4, subd. (a).)

[7]Federal courts can apparently grant such relief without the benefit of specific statutory authorization. Such courts, "as an exercise of their 'inherent powers,' [may] order expunction of either arrest or conviction records. To guide that decision, the circuits have formulated a range of standards. Some circuits describe themselves as acting under 'extraordinary circumstances,' others as preserving rights, balancing equities, or some amalgam thereof. The reported instances of expunction are not numerous. Further the Fifth and Seventh Circuits are skeptical of the practice. While one aspect of the critique is predicated upon separations of powers concerns, other criticisms parallel those raised about vacatur on consent. As one court put it, the 'judicial editing of history is likely to produce a greater harm than that sought to be corrected.' " (Resnik, *Whose Judgment? Vacating Judgments, Preferences for Settlement, and the Role of Adjudication at the Close of the Twentieth Century* (1994) 41 UCLA L.Rev. 1471, 1517-1520, fns. omitted.) Federal prosecutors have the authority to agree to orders of expungement. (*United States* v. *Cook* (S.D.Tex. 1979) 480 F.Supp. 262, 263.) Although expunction is sometimes employed in order to help a deserving individual, and has been granted in order to solve an immigration problem (*Natwig* v. *Webster* (D.R.I. 1983) 562 F.Supp. 225), exercise of the inherent federal judicial power of expunction of a record of conviction (as opposed to a record of arrest) is ordinarily reserved for the situation in which the defendant is actually innocent or the arrest or conviction is constitutionally questionable. Neither of these factors is present in this case.

it inappropriate to make that inquiry because appellant has not sought such relief. Section 1203.4 is pertinent to our analysis only because it is the only postconviction relief from the consequences of a valid criminal conviction available to a defendant under our law.[8]

Because the relief sought in this case is authorized neither by statute nor by *Neary*, the motion for stipulated reversal is denied. Appellant shall have 30 days from the date of this order to file his opening brief.

Smith, J., and Phelan, J., concurred.

A petition for a rehearing was denied December 9, 1994.

---

[8]Although the discretion of a trial judge to dismiss a criminal action under Penal Code section 1385 in the interests of justice "may be exercised at any time during the trial, including after a jury verdict of guilty" (*People* v. *Superior Court* (*Flores*) (1989) 214 Cal.App.3d 127, 136 [262 Cal.Rptr. 576]), this statute has never been held to authorize dismissal of an action after the imposition of sentence and rendition of judgment. (See *People* v. *Benjamin* (1957) 154 Cal.App.2d 164, 173 [315 P.2d 896].) In any event, section 1385 can be invoked only by a trial judge or magistrate on his or her own motion or that of the prosecuting attorney, it does not confer any right of relief upon the defendant. (*People* v. *Ritchie* (1971) 17 Cal.App.3d 1098, 1104 [95 Cal.Rptr. 462].)