[No. H037320. Sixth Dist. Dec. 19, 2012.]

THE PEOPLE, Plaintiff and Appellant, v.
HYUNG JOON KIM, Defendant and Respondent.

## Counsel

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan, Amy Haddix and Bridget Billeter, Deputy Attorneys General, for Plaintiff and Appellant.

Law Offices of Joel Franklin, Joel Franklin; and J. Courtney Shevelson for Defendant and Respondent.

## Opinion

**PREMO, J.**—Fourteen years after pleading guilty to petty theft with a prior and 12 years after having served a three-year prison sentence for the conviction, defendant Hyung Joon Kim invited the trial court to dismiss the action in the interests of justice pursuant to Penal Code section 1385.[1] The trial court accepted the invitation and dismissed the action on its own motion over the People's objections. The People appeal and advance several reasons why the trial court erred. We agree with their principal reason, namely, that a trial court has no authority to dismiss an action after judgment has been imposed and the defendant has served his or her sentence. We therefore reverse the order and need not address the People's secondary contentions.

### BACKGROUND

Defendant immigrated to this country at age six from South Korea, and became a "lawful permanent resident in 1986 and has resided continuously in this country since his initial entry." (*People v. Kim* (2009) 45 Cal.4th 1078, 1084–1085 [90 Cal.Rptr.3d 355, 202 P.3d 436] (*Kim*).) However, he had several juvenile arrests and had been made a ward of the court and placed on probation before turning 18. Within months after turning 18, defendant suffered a conviction for first degree burglary and the trial court placed him on probation. Within the following two years, however, he was twice convicted for theft-related crimes. The first conviction was for first degree burglary for which the trial court placed defendant on probation. The second conviction was for petty theft with a prior (the first degree burglary conviction). It resulted from a 1997 guilty plea agreement in which defendant had

---

[1] Further unspecified statutory references are to the Penal Code.

executed a form that acknowledged: " 'I understand that if I am not a citizen of the United States a plea of "Guilty"/"No Contest" could result in deportation, exclusion from admission to this country, and/or denial of naturalization.' " (*Id.* at p. 1086.) For this conviction, the trial court sentenced defendant to serve three years in prison. It also revoked probation in the first degree burglary case and sentenced defendant to serve two concurrent years in prison for that conviction. Defendant was released from prison in 1999 on three-year parole.

All of which, per our Supreme Court, plunged defendant into "a labyrinth of legal problems," all related to his status as a lawful resident, but not a citizen, of this country. (*Kim, supra*, 45 Cal.4th at p. 1086.) Included in this series of developments was a detention by the federal INS (Immigration and Naturalization Service)[2] for almost six months in 1999, and then the initiation of deportation (also known as "mandatory removal") proceedings by the INS in 2002. (*Kim*, at p. 1087.)

To counter this, throughout 2003 and 2004, defendant "began filing collateral challenges to his various state convictions in an attempt to eliminate them as the basis for deportation." (*Kim, supra*, 45 Cal.4th at p. 1087.) When these did not solve his problems with the INS, in 2005, he filed two motions in the trial court. The first was entitled " 'MOTION TO VACATE JUDGMENT (CORAM NOBIS).' "[3] It sought to vacate the petty-theft-with-a-prior conviction. (45 Cal.4th at p. 1089.) One of the allegations of the motion was that his 1997 plea was not " 'knowing, intelligent, free or voluntary, and was [thus] void *ab initio*' " under the United States Constitution. (45 Cal.4th at p. 1089.) Defendant's 1997 attorney also filed a supporting declaration elaborating on both his and defendant's ignorance of the immigration-related consequences of his plea. The trial court granted the motion and the companion motion. In support of the ruling, it specifically cited counsel's admission of his ignorance of the immigration consequences of the 1997 plea. We reversed the grant of the *coram nobis* petition (*People v. Kim*■ (Cal.App.)), and the Supreme Court affirmed our judgment in *Kim*.

Among other things, the Supreme Court held that "a claim of ineffective assistance of counsel, which relates more to a mistake of law than of fact, is

---

[2] The INS is now known as the Department of Homeland Security. The name change occurred at some point during defendant's legal problems. "Deportations are now prosecuted by United States Immigration and Customs Enforcement [(commonly known as ICE)]." (*Kim, supra*, 45 Cal.4th at p. 1086, fn. 2.) We will use INS throughout for clarity.

[3] The second motion was one which our Supreme Court treated as essentially redundant with the *coram nobis* petition. (See *Kim, supra*, 45 Cal.4th at p. 1096.)

an inappropriate ground for relief on *coram nobis* . . . ." (*Kim, supra,* 45 Cal.4th at p. 1104.) According to the court, the alleged violation of defendant?s constitutional right to effective assistance of counsel should have been "raised in a motion for a new trial or in a petition for a writ of habeas corpus." (*Ibid.*) But, because defendant had served his sentence and completed his parole period, the court in *Kim* held that he was no longer in custody and could not therefore challenge his conviction by petition for writ of habeas corpus. (*Id.* at p. 1108.)

Undeterred, in 2011, defendant attacked the petty-theft-with-a-prior conviction by filing the underlying pleading, which he deemed a "Suggestion for Dismissal in the Interests of Justice under Penal Code Section 1385."[4] He supported the suggestion with declarations that summarized his personal history from 2005 and reiterated that his 1997 plea was a product of ineffective assistance of counsel based on counsel's ignorance of the immigration consequences of the plea. The People opposed the suggestion by arguing that (1) the trial court had no authority to entertain the suggestion because there was no case pending against defendant, (2) if there were a case in which defendant had been on probation, that probation had expired, (3) the plea bargain implicitly contemplated that defendant would suffer a felony conviction and dismissal would violate the bargain, (4) defendant had failed to exercise reasonable diligence in filing the suggestion given that the INS began deportation proceedings in 1998, (5) defendant's remedy was in habeas corpus, (6) defendant was raising an improper piecemeal claim given that the claim mirrors the *coram nobis* claim, (7) defendant's suggestion was barred by the law-of-the-case doctrine because we had addressed the merits of the ineffective-assistance-of-counsel issue and found no prejudice (the Supreme Court did not address the merits), (8) defendant's suggestion was barred because its sole purpose was to avoid deportation (*People v. Mendoza* (2009) 171 Cal.App.4th 1142, 1159 [90 Cal.Rptr.3d 315]), and (9) dismissal would not serve the interests of justice given defendant's personal history from 2005, which included convictions for possessing a blackjack and driving under the influence of alcohol.

The trial court reasoned as follows: "Well, I have a suspicion that given the gravity of this case and the previous positions taken by the appellate courts that . . . the People's position is . . . ultimately going to prove correct. And I have some misgivings about going down this road because of, assuming it flies, what the consequences of it might be in terms of legislative response to Courts doing things that the Court thinks is right but other people may not.

---

[4] Under section 1385, subdivision (a), a defendant is not entitled to move for dismissal in the furtherance of justice (the trial court on its "own motion or upon the application of the prosecuting attorney"). A defendant may, however, " 'invite the court to exercise its power.' " (*People v. Carmony* (2004) 33 Cal.4th 367, 375 [14 Cal.Rptr.3d 880, 92 P.3d 369].)

[¶] However, you have to look at each case on its own. So the Court on its own motion grants the order. The case is dismissed pursuant to [section] 1385 of the Penal Code for the following reasons: The plea entered in this case is legally invalid as a product of ineffective assistance of counsel in violation of defendant's constitutional rights. The defendant complied with all the terms and conditions of his original sentence, was an exemplary inmate, he also complied with all the terms of the suspended sentence entered in May of 2003. [¶] As a result of the plea in this case, the defendant is facing devastating immigration consequences and risk of deportation because of ineffective assistance of counsel. If he's deported, he will not be able to reenter the United States under any circumstances. Defendant will be separated from his family and has no family in Korea as far as the Court is aware. Defendant may ultimately be imprisoned in Korea because of his religious beliefs as a pacifist. [¶] The offense committed in this case was relatively minor; although, the consequences have not been. [¶] Court is aware that Mr. Kim has violated the law subsequent to the conviction in this case. The Court is frankly somewhat disappointed that Mr. Kim was not more aware of how those behaviors, although somewhat trivial, perhaps, would affect his life. But in any case, they hardly justify banishment. [¶] Mr. Kim has, during the last few years, conducted himself in a manner that leaves the Court to believe that he has made mental changes as well as the behavioral changes that are necessary for him to live as a law-abiding citizen. Mr. Kim has no other charges pending against him at this time as far as the Court is aware. [¶] He has this decent job now and has had that job for quite some time, and he is working towards completing his education, and in order to better serve as. a good citizen of the United States."

The trial court then made written findings in support of dismissal that tracked its remarks in more detail.

## DISCUSSION

Section 1385, subdivision (a), authorizes the trial court to "order an action to be dismissed" if the dismissal is "in furtherance of justice."

Defendant, however, is not seeking dismissal of a pending action or charges or allegations in an indictment or information, but rather vacation of a long since final judgment of conviction. Use of section 1385 in that manner would be inconsistent with the Supreme Court's strict focus on the language of the statute.

"Our case law has construed section 1385 to permit a court to dismiss individual counts in accusatory pleadings [citation], sentencing enhancements [citation], allegations that the defendant has suffered a prior conviction

[citation], and allegations that the defendant has suffered a prior 'strike . . . .' " (*In re Varnell* (2003) 30 Cal.4th 1132, 1134 [135 Cal.Rptr.2d 619, 70 P.3d 1037], fn. omitted.) But the section "has never been held to authorize dismissal of an action after the imposition of sentence and rendition of judgment." (*People v. Barraza* (1994) 30 Cal.App.4th 114, 121, fn. 8 [35 Cal.Rptr.2d 377].) And such a construction of section 1385 would be impossible to reconcile with the Supreme Court's careful delineation of the available avenues for postjudgment relief in *People v. Villa* (2009) 45 Cal.4th 1063 [90 Cal.Rptr.3d 344, 202 P.3d 427], and *Kim, supra,* 45 Cal.4th 1078, which omitted any reference to section 1385.

▊ Defendant does not dispute the principle that section 1385 does not authorize a dismissal after imposition of sentence and rendition of judgment. Instead, he counterintuitively urges that there has not yet been a judgment in this case. He arrives at this conclusion as follows.

One of defendant's 2003 collateral challenges was a nonstatutory motion to vacate the three-year petty-theft-with-a-prior sentence (not conviction) and the two-year concurrent first degree burglary sentence (not conviction) on the ground that he did not know that the sentences would subject him to mandatory deportation. The People did not oppose the motion. At the hearing, the trial court inquired of the prosecutor whether he "want[ed] to get into this." To this the prosecutor replied: "No. I just want to say we're not opposing it. That's as far into it as I want to get." The trial court then granted the motion, vacated the sentences, and ordered nunc pro tunc that defendant be placed on one-day probation with a condition that he serve 364 days in jail and a credit for having served that time.

According to defendant, "By suspending imposition of sentence in the 2003 proceedings, the trial court changed the action against [him] from one in which a judgment was entered and a sentence imposed to one in which no judgment was entered and no sentence was imposed." (See *People v. Howard* (1997) 16 Cal.4th 1081, 1087 [68 Cal.Rptr.2d 870, 946 P.2d 828] ["When the trial court suspends imposition of sentence, no judgment is then pending against the probationer, who is subject only to the terms and conditions of the probation."].) Defendant's analysis is erroneous.

▊ Trial courts do not have unlimited authority to modify a sentence once imposed. The common law rule is that, once a defendant begins serving a sentence, the sentencing court loses jurisdiction to modify the sentence it imposed. (See *People v. Karaman* (1992) 4 Cal.4th 335, 344, 347, 350 [14 Cal.Rptr.2d 801, 842 P.2d 100]; *People v. Howard, supra,* 16 Cal.4th at p. 1089.) It is true that, apart from statute, courts have inherent authority to correct clerical errors in a sentence at any time. "It is not open to question

that a court has the inherent power to correct clerical errors in its records so as to make these records reflect the true facts. [Citations.] The power exists independently of statute and may be exercised in criminal as well as in civil cases. [Citation.] The power is unaffected by the pendency of an appeal or a habeas corpus proceeding. [Citation.] The court may correct such errors on its own motion or upon the application of the parties." (*In re Candelario* (1970) 3 Cal.3d 702, 705 [91 Cal.Rptr. 497, 477 P.2d 729].) This nunc pro tunc authority, however, is limited to true clerical errors.

Here, defendant did not seek to correct a clerical error but sought instead to " ' "declare that something was done which was not done." ' " (*People v. Borja* (2002) 95 Cal.App.4th 481, 485 [115 Cal.Rptr.2d 728] (*Borja*).) "An amendment that substantially modifies the original judgment or materially alters the rights of the parties, may not be made by the court under its authority to correct clerical error . . . unless the record clearly demonstrates that the error was not the result of the exercise of judicial discretion." (*In re Candelario, supra,* 3 Cal.3d at p. 705.) "The distinction between clerical error and judicial error is 'whether the error was made in rendering the judgment, or in recording the judgment rendered.' " (*Ibid.*)

In *Borja*, the defendant had been initially granted probation conditioned in part on a jail sentence of 365 days. Almost six years later, after the defendant had completed his probation, the defendant sought and obtained a nunc pro tunc modification of the probation condition to a sentence of 364 days. This change was important to avoid the defendant's deportation for an aggravated felony under federal immigration laws. (*Borja, supra,* 95 Cal.App.4th at pp. 483–484.) The appellate court found the change invalid, stating that "[t]his case does not involve a clerical order." (*Id.* at p. 485.) The defendant was seeking a retroactive change in the sentence "that had been intended, imposed and served." (*Ibid.*) The same reasoning applies in this case.

■ The trial court's vacation of defendant's sentences was not only improper but also void because it was an act in excess of jurisdiction. (See, e.g., *In re Marriage of Padgett* (2009) 172 Cal.App.4th 830, 855 [91 Cal.Rptr.3d 475] [trial court "exceeded its power" in making improper nunc pro tunc order]; *APRI Ins. Co. v. Superior Court* (1999) 76 Cal.App.4th 176, 186 [90 Cal.Rptr.2d 171] ["trial court was without authority" in making improper nunc pro tunc order]; *Rochin v. Pat Johnson Manufacturing Co.* (1998) 67 Cal.App.4th 1228, 1238 [79 Cal.Rptr.2d 719] ["trial court had no jurisdiction to so amend the judgment, and the resulting amended judgment is thus void and of no effect"]; *Hamilton v. Laine* (1997) 57 Cal.App.4th 885, 893 [67 Cal.Rptr.2d 407] ["trial court had no authority to grant . . . order nunc pro tunc . . ."]; see *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 291 [109 P.2d 942] ["Speaking generally, any acts which exceed the

defined power of a court in any instance . . . are in excess of jurisdiction . . . ."]; *Vasquez v. Vasquez* (1952) 109 Cal.App.2d 280, 283 [240 P.2d 319] ["A judgment . . . may be void in whole or in part because it granted some relief which the court had no power to grant."].)

Defendant argues, however, that the People's failure to file an appeal from the nunc pro tunc order resulted in that order becoming final and preclusive. Again, defendant's analysis is erroneous.

"The doctrine of res judicata is inapplicable to void judgments. 'Obviously a judgment, though final and on the merits, has no binding force and is subject to collateral attack if it is wholly void for lack of jurisdiction of the subject matter or person, and perhaps for excess of jurisdiction . . . .' " (*Rochin v. Pat Johnson Manufacturing Co., supra,* 67 Cal.App.4th at pp. 1239–1240.) "A 'final' but void order can have no preclusive effect. ' "A void judgment [or order] is, in legal effect, no judgment. By it no rights are divested. From it no rights can be obtained. Being worthless in itself, all proceedings founded upon it are equally worthless. It neither binds nor bars any one." ' " (*Id.* at p. 1240.)

In short, judgment had been imposed and defendant had served his prison sentence in this case. The trial court therefore had no authority to dismiss the action pursuant to section 1385.

## DISPOSITION

The order dismissing this action is reversed.

Rushing, P. J., and Elia, J., concurred.