Filed 2/4/14  P. v. Rubin CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B242846 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA080530) |
| v. | |
| EDWARD RUBIN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  James Dabney, Judge.  Affirmed in part, reversed in part and remanded with direction.

Melissa J. Kim, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Shawn McGahey Webb and Taylor Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Edward Rubin appeals from his conviction of second degree burglary and forgery. He contends the trial court prejudicially erred in admitting evidence of an uncharged act. The People contend the trial court erred in modifying the sentencing minute order nunc pro tunc to purportedly strike a prior conviction found true pursuant to the Three Strikes law.[1] We affirm the judgment, but reverse the nunc pro tunc order and remand for the trial court to state its reasons for striking the Three Strikes prior conviction.

**FACTS**

Viewed in accordance with the usual rules on appeal (*People v. Zamudio* (2008) 43 Cal.4th 327, 357-358), the evidence established that in 2011, Dr. Louis Manzi owned the Orange Coast Eye Center. In April of that year, Manzi's briefcase containing, among other things, a copy of a check written on Orange Coast Eye Center's Citibank account was stolen. Manzi closed the account about a month later, after the legitimate outstanding checks had cleared. Manzi did not know defendant and never issued a check to him.

On October 13, 2011, defendant opened accounts at the Citibank in Covina, depositing $100 deposit into checking and $5 into savings. The bank forms defendant filled out indicate he lived in South Los Angeles and was unemployed. As was standard practice, the account was blocked the next day when defendant could not be contacted. On October 18, 2011, the account was debited $105 (a blocked account does not prevent the account holder from withdrawing his or her own funds). A Citibank fraud investigator testified that opening an account so far from his residence when he was unemployed was a "red flag." Opening an account with a minimum deposit and withdrawing the money very soon thereafter is a practice consistent with check fraud. It is also common that fraudulent checks are written in an amount less than $5,000, because

---

[1] See Penal Code section 1170.12, subdivisions (a) through (d), and section 667, subdivisions (b) through (i) (the Three Strikes law). All future undesignated statutory references are to the Penal Code.

2

checks of $5,000 or more are subject to additional scrutiny. Because the usual 30-day delay on access to funds in a new account does not apply when a Citibank check from one account is deposited into another Citibank account, another common practice for opening fraudulent accounts is to deposit Citibank checks into Citibank accounts within the first 30 days of opening an account. Detective Sean Williams of the Los Angeles Police Department, the investigating officer in this case, confirmed that these were common practices in check fraud cases.

Citibank teller Sonia Alvarado testified that she was working at the Rancho Park Citibank when defendant approached her window at about 4:45 p.m. on October 25, 2011, and asked to deposit a $4,800 check, purportedly written on Orange Coast Eye Center's Citibank account. Defendant said it was his paycheck. Alvarado noticed that two different addresses were printed on the front of the check – something that Citibank would never do. Using the bank's computer system to verify the account on which the check was written, Alvarado saw that the check and the electronic signature on it did not match the check image or signature on file for Orange Coast Eye Center. Upon further research, Alvarado discovered that the account had been closed "due to fraud." Realizing something was amiss, Alvarado told defendant she needed to have the check verified. Alvarado gave the check to assistant bank manager Andres Quiros. After contacting Dr. Manzi, who confirmed that the check was not authorized, Quiros gave the check to bank manager Diana Hammond, who called the police.

Manzi testified that the $4,800 check defendant tried to deposit looked like a poor counterfeit of a check from the business account Manzi had closed after his briefcase was stolen.

Los Angeles Police Officer Roberto Sanchez and his partner, Robert Giminez, arrested defendant at the bank and transported him to the police station in the back of their patrol car. Before placing defendant in the back seat, Sanchez confirmed that there was nothing on the seat. When Sanchez removed defendant from the car upon arrival at the police station, Sanchez found an "Elite" debit card in defendant's name on the back seat. In addition, Sanchez found two credit cards, a California driver's license and a

3

Social Security card, all in the name of Kevin I., on the back seat. Sanchez booked the cards into evidence. The cards were not related to defendant's efforts to cash the fraudulent check at Citibank that afternoon and Sanchez did not know if the cards had been used in the commission of any crimes.

## PROCEDURAL BACKGROUND

Defendant was charged with second degree commercial burglary (§ 459) and forgery (§ 470, subd. (d)). Two Three Strikes priors were alleged based on defendant's convictions in case No. TA035202 of felony lewd conduct (§ 288, subd. (b)); and rape in concert (§ 264.1). In addition, two section 667.5, subdivision (b) enhancements were based on prison terms defendant served in: (1) case No. TA037202 and (2) case No. NA082233. Defendant was convicted on both counts following a jury trial at which he appeared in pro per. In a bifurcated proceeding, the trial court found true the allegations that defendant suffered two strike priors and served two prior prison terms within the meaning of section 667.5, subdivision (b). Defendant waived time for sentencing. There followed this colloquy:

> THE COURT: All right. Let's hear first from the People. What's your position? What are you requesting?
> [THE PROSECUTOR]: Your Honor, the People are requesting, at the minimum, mid-term times two plus the two years for the prison prior.
> THE COURT: So you're requesting six years?
> [THE PROSECUTOR]: Yes, Your Honor."

Asked what information he wanted the trial court to consider in deciding the appropriate sentence, defendant did not ask that the trial court strike either of the two Three Strikes priors found true. Instead, he focused on his innocence of the underlying offenses. In response to the prosecutor's comment that she had the facts of the underlying cases, the trial court stated: "No. I'm not considering striking the strikes so I don't need to. I understand I have the ability and discretion to, but I don't think under these circumstances that I will." Although it declined to strike the two strike priors, without explanation the trial court sentenced defendant as if he had just one qualifying strike (i.e.

4

by doubling the 16 month low term): "The court believes that in imposing the strike prior and the two prison priors –there are no aggravating circumstances left given the nature of these particular charges. So the court's going to select the low term of 32 months. [¶] In addition, that's calculated pursuant to [the Three Strikes law], plus an additional two years for the 667.5(b) priors. That's a total of 56 months." Sentence on the forgery count was stayed pursuant to section 654. The People did not alert the trial court to the fact that the sentence was inconsistent with the true finding on the two alleged strike priors.

The sentencing minute order entered the next day accurately reflects what occurred at the sentencing hearing: the trial court found true the two alleged strike priors, but sentenced defendant as if he had just one qualifying strike. The minute order does not state that the trial court struck one of the Three Strikes priors pursuant to section 1385. To the extent doing so is implicit in the sentence imposed, the trial court's reasons are not set forth in the minute order, as required by the statute. Defendant timely appealed.

Although the People did not appeal the sentence, more than a year after judgment was entered, while defendant's appeal was pending, the trial court purported to amend the sentencing minute order with a nunc pro tunc order dated September 20, 2013. The nunc pro tunc order:

- Added the sentence: "The People proceed as to one strike prior;"
- Deleted the true finding on two strike priors; and
- Substituted a true finding on one Three Strikes law prior.

We gave the People permission to file a letter brief challenging the nunc pro tunc order as in excess of the trial court's authority to correct a clerical error in the original judgment, and gave defendant five days to respond. Defendant has not filed a response to the People's letter brief.

5

**DISCUSSION**

*A.    Evidence of Uncharged Act Was Properly Admitted*

Defendant contends the trial court erred in admitting evidence that defendant was in possession of credit cards, a driver's license and a social security card belonging to Kevin I., and that he discarded those items in the back of the police car. He argues that the evidence did not tend to logically, naturally and by reasonable inference prove the element of intent to defraud in this case. We disagree.

Based on the counterfeit check he tried to deposit at Citibank, defendant was charged with forgery, in violation of Penal Code section 470, subdivision (d), which makes it a crime to pass or attempt to knowingly pass a counterfeit check with the intent to defraud. He was not charged with any crime relating to his possession of credit cards and identification belonging to another. (See, e.g., Pen. Code, § 484e, subd. (c) ["Every person who, with the intent to defraud, acquires or retains possession of an access card without the cardholder's or issuer's consent, with intent to use, sell, or transfer it to a person other than the cardholder or issuer is guilty of petty theft."].) Evidence that a person engaged in uncharged criminal conduct is admissible to prove intent of the charged offense, among other things. (Evid. Code, § 1101, subd. (b).) In order to be admissible for that purpose, the uncharged conduct must be sufficiently similar to the charged conduct to support the inference that the defendant probably harbored the same intent in each instance. (*People v. Soper* (2009) 45 Cal.4th 759, 775, internal quotations and citations omitted.)

We review the trial court's Evidence Code section 1101, subdivision (b) rulings for abuse of discretion. (*People v. Carter* (2005) 36 Cal.4th 1114, 1147.) Any error in admitting evidence of uncharged criminal conduct is subject to harmless error analysis under the standard announced in *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Thomas* (2011) 52 Cal.4th 336, 356.)

Here, defendant objected that discovery of the access cards in the back of the police car was not relevant to the charged crimes. The People countered that, although

6

the police had been unable locate Kevin I., defendant had not explained why he was in possession of his identification and credit cards; defendant's intent to commit forgery could be inferred from defendant's possession and attempt to discard the cards before booking. The trial court concluded:

> "I think the fact that the items were left in the police vehicle is enough for the People to argue that – that those items were possessed illegally and with the intent to defraud [] under [Evidence Code section] 1101 here, even though we're talking about checks as opposed to credit cards. [¶] . . . So I'm [going to] overrule your motion and allow those items to come in for the sole purpose of establishing intent."

In its final charge to the jury, the trial court instructed that, although defendant had not been charged with violation of section 484e, subdivision (c), if the jury found by a preponderance of the evidence that defendant had committed that crime, it could consider such evidence "for the limited purpose of deciding whether or not the defendant acted with the intent to defraud in this case. Do not consider that evidence for any other purpose. [¶] If you conclude the defendant committed the uncharged offense, that conclusion is only – only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of burglary and forgery. . . . " In closing, the prosecutor argued:

> "So I just want to make clear he's not being charged with [possessing Kevin I.'s access cards] okay? It's just that he had cards on him, and that is a crime. [¶] But what I'm trying to use this evidence for and what it was allowed to do with this evidence is that it's another piece of the puzzle. It's another piece that proves that the defendant knew what he was doing in this case, that he knew that the check was counterfeit, and that he intended to defraud either the bank or Dr. Manzi. [¶] . . . [¶] And why is this so important to his intent? Because I.D. theft, fraud, forgery [and] having someone else's information, this valuable information on it, is part and parcel of the same type of crime, right? [¶] This is all part of the same type of crime here, using someone's true information in a criminal way. And so that's why this evidence was presented. And the defendant actually had it on him on the day that he was committing the check fraud."

We find no abuse of discretion in the trial court's admission of the challenged evidence on the issue of intent. First, there was substantial evidence from which the jury

7

could find by a preponderance of the evidence that defendant's possession of Kevin I.'s access cards was a violation of section 484e, subdivision (c): defendant's possession of the cards can be reasonably inferred from the fact that the items were not there before defendant was placed in the back seat of the patrol car; the elements of intent to defraud and Kevin's lack of consent can be reasonably inferred from defendant's effort to discard the items so they would not be found in his possession. Second, both the charged offense (forgery) and uncharged offense (unlawful possession of access cards) are financial crimes which include the element of intent to defraud. For these reasons, we find the uncharged offense was similar enough to the charged offense to make evidence of the uncharged offense admissible under Evidence Code section 1101, subdivision (b) to prove intent.

B.    *The Trial Court Exceeded Its Authority In Issuing A Nunc Pro Tunc Order to Correct the Sentencing Minute Order*

The People contend that the trial court exceeded its authority by issuing a nunc pro tunc order which attempts to correct a judicial error, not a clerical error. They argue that the statement in the nunc pro tunc order that the People elected to proceed as to one Three Strikes prior and the trial court found true just one Three Strikes prior, is contrary to the facts. We agree with the People that further limited sentencing proceedings are in order.

Courts "have inherent authority to correct clerical errors in a sentence at any time. 'It is not open to question that a court has the inherent power to correct clerical errors in its records so as to make these records reflect the true facts. [Citations.] . . . The power is unaffected by the pendency of an appeal or a habeas corpus proceeding. [Citation.] The court may correct such errors on its own motion or upon the application of the parties.' [Citation.] This nunc pro tunc authority, however, is limited to true clerical errors." (*People v. Kim* (2012) 212 Cal.App.4th 117, 123-124.) It does not authorize the court to substantially modify the original judgment. " 'The distinction between clerical error and judicial error is "whether the error was made in rendering the judgment, or in

8

recording the judgment rendered." ' [Citation.]" (*Ibid.*) A nunc pro tunc order cannot "declare that something was done which was not done." (*Ibid.*, citing *People v. Borja* (2002) 95 Cal.App.4th 481, 485 [365 day jail sentence as condition of probation cannot be changed to a 365 day sentence by nunc pro tunc order].)

Here, the nunc pro tunc order sought to correct the inconsistency between the trial court's true finding on two Three Strikes priors, and the imposing of a sentence as if there was just one qualifying strike. The Three Strikes law requires enhanced sentencing unless the trial court dismisses the prior conviction in the interests of justice pursuant to section 1385. (*People v. Morales* (2003) 106 Cal.App.4th 445, 456.) Under the Three Strikes law, if the defendant has two qualifying strikes, sentence on the current felony conviction must be an indeterminate life term, with the minimum to be calculated as the greater of three alternatives (§ 1170.12, subd. (c)(2)); if the defendant has one qualifying strike, sentence on the current felony conviction must be doubled (§ 1170.12, subd. (c)(1)). Conviction of multiple counts in one case may result in multiple strikes. (*People v. Fuhrman* (1997) 16 Cal.4th 930, 937.) Although section 1385 gives the trial court discretion to strike a Three Strikes prior on its own motion (§ 1170.12, subd. (d)(2)), the trial court must set forth in writing its reasons for doing so. (See *People v. Bonnetta* (2009) 46 Cal.4th 143.)

Here, the original minute order accurately reflected what transpired at the sentencing hearing: the trial court found true two Three Strikes priors but sentenced defendant as if he had just one prior. Although it is implicit in the sentence imposed that the trial court struck one of the strike priors, its reasons for doing so were not set forth in the minute order as required by section 1385. Instead of correcting that error, the nunc pro tunc order purported to "declare something was done which was not done," specifically, that the People elected to proceed as though there was only one Three Strikes prior and that the trial court found true only one prior. Because that order was in excess of what the trial court could do nunc pro tunc, the order must be stricken.

Striking the nunc pro tunc order does not end our inquiry. This is because the trial court's failure to set forth its reasons for striking one of the strike priors in the original

9

sentencing order results in an unlawful sentence. (*Bonnetta, supra*, 46 Cal.4th at p. 153.) In *Bonnetta,* our Supreme Court concluded the trial court's failure to set forth in writing its reasons for striking the enhancements was error, which could not be waived by the People's failure to remind the trial court of the necessity of a written order at the time of sentencing, or to object to the minute order. The *Bonnetta* court explained that, as a practical matter, since "a minute order is entered by the court only *after* hearing, the district attorney cannot easily ensure that it is entered or detect its absence." (*Id*. at p. 152 [distinguishing *People v. Scott* (1994) 9 Cal.4th 331, which held that error in failing to articulate reasons for sentencing choice is waived unless challenged at the time of sentencing].) As matter of policy, "the failure to set forth the reasons for a dismissal in an order entered upon the minutes is not a routine defect in sentencing. It is a violation of a mandatory requirement put in place to benefit the public by assuring that a court through neglect or abuse of discretion has not misused the 'great power' of dismissal. [Citation.]" (*Id.* at pp. 152-153; see also *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 531 [failure to state reasons for striking a Three Strikes prior requires reversal].)

In its supplemental brief, respondent asks that we strike the nunc pro tunc order and remand for "clarification of appellant's sentence." Respondent points out that it "appears the court and the parties intended that appellant be sentenced as a second strike offender." We agree that the state of the record indicates the trial court intended to sentence defendant by utilizing only one Three Strike prior to double the base term. The trial court was within its discretion to impose such a sentence but it was required to state in writing its reasons for doing so. (§ 1385, subd. (a).) We conclude the proper remedy is to remand for the trial court to correct the defect in the original sentencing minute order by setting forth its reasons for striking one of the strike priors in a written order entered upon the minutes.

## DISPOSITION

The judgment of conviction is affirmed.  The nunc pro tunc order dated September 25, 2013 is stricken and the matter is reversed and remanded only to permit the trial court to state its reasons for striking one of the Three Strikes priors in a written order entered upon the minutes.

                                                   RUBIN, J.

WE CONCUR:


BIGELOW, P. J.


GRIMES, J.

11