Filed 10/15/14  P. v. Reyes CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARIA VIRGINIA REYES,<br><br>    Defendant and Appellant. | H039847<br>(Santa Clara County<br>Super. Ct. No. B1154841) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHRISTINE REYES,<br><br>    Defendant and Appellant. | H039975<br>(Santa Clara County<br>Super. Ct. No. B1154841) |

Defendants Maria Virginia Reyes and Christine Reyes (Maria's daughter)[1] each pleaded no contest to grand theft from a person (Pen. Code, § 487, subd. (a)[2]), arising from their theft of over $1.6 million from their former employer, Dr. Joann Blessing-Moore.  Defendants admitted the high dollar amount of the theft, resulting in a sentence

---

[1]  For clarity, and meaning no disrespect, we will refer to the defendants by their first names.

[2]  Unspecified statutory references are to the Penal Code.

enhancement (§ 12022.6, subd. (a)(3)) and ineligibility for probation (§ 1203.045, subd. (a)). On appeal, defendants argue the trial court illegally modified their sentences months after imposing them by deeming defendants ineligible for "custody alternative programs" in lieu of serving their entire sentences in county jail.[3] For the reasons stated here, we will affirm the judgments.

## I.    TRIAL COURT PROCEEDINGS

According to defendants' probation reports, which contain identical offense summaries, in 2000 Maria began working as an office manager at Dr. Blessing-Moore's medical office. In 2001, the doctor hired Christine as a part-time employee. In 2007, Dr. Blessing-Moore began investigating the office's finances when the United States Internal Revenue Service informed her of overdue business taxes. As a result of an investigation by an outside accountant, Dr. Blessing-Moore discovered that defendants had reportedly stolen over $1.8 million from her between 2000 and 2007 through several methods, including giving themselves unauthorized raises, bonuses, and overtime payments.

Dr. Blessing-Moore reported the theft to the police in 2007. In July 2011, the People charged defendants with grand theft (§ 487, subd. (a)) including excessive taking (§ 12022.6, subd. (a)(3)) and probation ineligibility (§ 1203.045, subd. (a)). Christine was arrested later that month; Maria was arrested in October 2011 while serving a federal sentence for tax evasion. In October 2012, defendants signed open plea agreements where they pleaded no contest to grand theft, admitted both special allegations, and acknowledged their maximum term of confinement was six years.

Defendants' probation reports included a victim's statement from Dr. Blessing-Moore. She stated that the theft had forced her and her husband to spend all their retirement savings to keep the business from going bankrupt. She also asked the court to impose "significant periods of incarceration" because she thought it was unlikely that

---

[3] Defendants appealed separately. We denied the People's motion to consolidate the appeals but ordered the two appeals considered together on our own motion.

defendants will ever be able to repay the money they stole. The probation office recommended the upper term of three years for grand theft and an additional three years for the section 12022.6, subdivision (a)(3) enhancement for Maria, to be served as a split sentence consisting of three years in county jail and three years of mandatory supervision subject to specified conditions. (§ 1170, subd. (h)(5) ["Unless the court finds that, in the interests of justice, it is not appropriate in a particular case, the court, when imposing a [felony] sentence [in county jail] ... , shall suspend execution of a concluding portion of the term for a period selected at the court's discretion."].) For Christine, the probation office recommended the middle term of two years for grand theft and an additional three years for the sentence enhancement, to be served as a split sentence consisting of two years and six months in county jail and two years and six months of mandatory supervision with specified conditions. (§ 1170, subd. (h)(5).)

At the joint sentencing hearing in January 2013, Dr. Blessing-Moore was present and made a statement. The trial court explained to the victim that "one of the things that is difficult for me in these positions is to figure out how to equate the harm which, frankly, I estimate is somewhat irreparable in this case, by a period of time in custodial confinement. I will guarantee you that it will be there. It will be significant." After the parties submitted the matter based on discussions conducted in chambers before the hearing, the court addressed the victim again, informing her that "what I am going to do today is come up with a number under the law that will be the sentencing number. And then under California law how much of that time will be served actually in custody. And how much of that time will be served, essentially, under supervision."

The court stated it would impose a six-year sentence on Maria and a five-year sentence on Christine but that it had to "figur[e] out how much of that [time] is, actually, going to be served locked up." The court ultimately followed the probation office's recommendation for Maria, sentencing her to "three years of actual custody time, and three years of actual supervision time." The court explained that "[a]fter completion of

3

three years of this sentence, ... [Maria] will be released on mandatory supervision, monitored by the probation department for three years ... ." Turning to Christine, the court found her role "relatively minor" and imposed a shorter sentence of five years, consisting of one year and six months of imprisonment in county jail and "the concluding portion ... on mandatory supervision ... ." The court also found defendants joint and severally liable to Dr. Blessing-Moore for $1,681,860.61 in restitution.

In May 2013, the court held a hearing at the People's request regarding Christine. Christine had been placed into "certain out-of-custody programs," leading the People to request that the court specify whether Christine was eligible for any "early release programs." Christine's attorney argued that even though Christine was participating in these programs she was still "technically in custody" and that nothing in the court's pronouncement of sentence foreclosed her participation in those programs. The trial court disagreed, stating "it was clearly the Court's intention ... that custody time was going to be custody time" and that Christine would not be eligible for release until the mandatory supervision phase of her split sentence. The court concluded that "this is not a modification of sentence as much as it is a clarification of the Court's original intent ... [and] a directive to the people [who] run those facilities to fulfill the Court's original intention ... that Ms. Reyes is not eligible for early release programs."

In June 2013, the court held a similar hearing regarding Maria, also at the request of the People. The People informed the court Maria was "being considered for a custody alternative program" and asked the court to clarify whether Maria was eligible for those programs. Maria's attorney claimed that because the court's January 2013 sentence did not specifically deem Maria ineligible for custody alternative programs, she was eligible and the court no longer had jurisdiction to recall and modify her sentence under section 1170, subdivision (d), because more than 120 days had elapsed since Maria was sentenced. The court stated its intention that "the three years custodial time, like a prison commitment, was actually going to be custodial time." As it had the previous month

regarding Christine's sentence, the court explained it was "providing clarification of the sentence previously imposed" and that "during the custodial portion of her split sentence [Maria] is not to be found eligible for any custody alternatives service unit programs ... ."

## II.    DISCUSSION

Defendants argue that because the trial court did not make a "special order" or impose specific conditions restricting their eligibility for alternative custody when it sentenced them in January 2013, its later "clarification" that they were ineligible for those programs constituted an unlawful sentence modification. Courts have limited authority to modify sentences after they are imposed. (*People v. Kim* (2012) 212 Cal.App.4th 117, 123.) With the exception of "the inherent power to correct clerical errors in its records so as to make these records reflect the true facts," (*In re Candelario* (1970) 3 Cal.3d 702, 705), courts may only modify a previously imposed sentence by recalling it under section 1170, subdivision (d), which provides that a "court may, within 120 days of the date of commitment on its own motion ... recall the sentence and commitment previously ordered and resentence the defendant ... , provided the new sentence, if any, is no greater than the initial sentence." (§ 1170, subd. (d).) Defendants argue that the trial court had no jurisdiction to deem them ineligible for custody alternative programs because the failure to previously specify their ineligibility was not a clerical error and the court expressly stated at each hearing that it was not recalling or modifying their sentences. Defendants further argue that even if the court intended to recall their sentences it could not do so under section 1170, subdivision (d) because the May and June 2013 hearings occurred more than 120 days after the sentences were imposed.

The flaw in defendants' reasoning is that the trial court's original oral pronouncement of judgment for each defendant foreclosed the possibility of custody alternative programs or early release. "Pronouncement of judgment must be done orally." (*People v. Blackman* (1963) 223 Cal.App.2d 303, 307.) Accordingly, the court's oral pronouncement generally controls over the clerk's minute order unless the

5

circumstances of the particular case at issue compel a contrary result. (*People v. Harrison* (2005) 35 Cal.4th 208, 226 ["[A] record that is in conflict will be harmonized if possible."].)

When the court pronounced each defendant's judgment in January 2013, it made clear that the custodial portions of the split sentences were to be served in county jail. The court explicitly weighed the amount of time defendants would serve "actually in custody" against the time they would serve "under [mandatory] supervision." Had the court intended to allow defendants to be eligible for custody alternative programs, such a juxtaposition would not make sense given the similarities between the supervision conditions imposed and conditions which would foreseeably attach to custody alternatives.

The record also does not support Christine's argument that custody alternative programs were authorized as technically "custodial" in nature. The court referred to the custodial phase as the time during which defendants would be "locked up" and described that period as a time of "actual confinement" and "actual custody time," not merely as custody credits or a custody equivalent. The court explained that only after completion of that period of "actual confinement" would defendants be "released on mandatory supervision ... ." In light of the repeated references at sentencing in January 2013 to defendants serving the custodial portions of their sentences in actual confinement in county jail, defendants' assertion that the court later "modified" their sentences by specifically stating that they were ineligible for custody alternative programs is without merit. At the May and June 2013 hearings, the court merely reaffirmed what it had made clear at the January 2013 hearing: that defendants were to be "locked up" in "actual confinement" for the custodial portions of their split sentences.

Because we find the court did not modify defendants' sentences in May and June 2013, section 1170, subdivision (d) is not implicated and we do not reach the issue of the duration of a trial court's jurisdiction to deem a defendant ineligible for custody

6

alternative programs after imposition of a sentence that is truly silent regarding eligibility for such programs.

### III.    DISPOSITION

The judgments are affirmed

_____

Grover, J.


**WE CONCUR:**




_____

Bamattre-Manoukian, Acting P.J.




_____

Márquez, J.